Moira Heiges-Goepfert (Cal. Bar No. 326861)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
New York, NY 10017
Telephone: (212) 245-1000
Facsimile:  (415) 638-8810
mhg@outtengolden.com

Mikael Rojas (Cal. Bar No. 309626)
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue NW, Suite 200W
Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile (646) 509-2008
mrojas@outtengolden.com

Ossai Miazad*
Michael Litrownik*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone:  (212) 245-1000
Facsimile: (646) 509-2060
om@outtengolden.com
mlitrownik@outtengolden.com

Ivan Espinoza-Madrigal*
Oren Nimni*
LAWYERS FOR CIVIL RIGHTS
61 Batterymarch Street, 5th Floor
Boston, MA 02110
Telephone: (617) 482-1145
Facsimile: (617) 482-4392
iespinoza@lawyersforcivilrights.org
onimni@lawyersforcivilrights.org

*Pro hac vice application forthcoming

Attorneys for Plaintiff and the Proposed Class

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN JUAREZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOCIAL FINANCE, INC. d/b/a SOFI, and SOFI LENDING CORP. d/b/a SOFI,<br><br>Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF 42 U.S.C. § 1981 AND CALIFORNIA STATE LAW**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ruben Juarez, individually and on behalf of all others similarly situated, by his attorneys, brings the following allegations against Defendants Social Finance Inc. and SoFi Lending Corp. (together "SoFi" or "Defendants"):

**SUMMARY OF CLAIM**

1. Mr. Juarez brings this case against SoFi for unlawful lending discrimination in violation of the Civil Rights Act of 1866, as codified by 42 U.S.C. § 1981 ("Section 1981") and the California Unruh Civil Rights Act, as codified by California Civil Code §§ 51 *et seq.*

2. SoFi is in the business of marketing, offering and extending a variety of financial services and credit products to consumers. As a lender, SoFi originates student loans, personal loans, and home mortgage and improvement loans, refinances student loans, and offers credit card consolidation (collectively, "Loans").

3. Since 2012, and continuing through early-December 2019, SoFi had a blanket policy of refusing to make Loans available to non-U.S. citizens who resided in the U.S. and held Deferred Action for Childhood Arrivals ("DACA"), which granted them federal work authorization and Social Security numbers ("SSNs").

4. SoFi's policy required applicants who were not U.S. citizens to be either lawful permanent residents ("LPRs") or holders of certain U.S. visas (E-2, E-3, H-1B, J-1, L-1, or O-1) to be eligible for Loans. Because DACA recipients are neither LPRs nor visa-holders, they were ineligible for Loans under SoFi's policy.

5. In early-December 2019, SoFi made DACA recipients eligible for Loans, but only if they apply by telephone and only with a co-signer who is a U.S. citizen or LPR—two requirements that are not imposed on applicants who are U.S. citizens, LPRs, or visa-holders.

6. SoFi's policies and practices of (a) denying DACA recipients the right to contract for credit because they were not U.S. citizens, LPRs, or holders of certain visas before early-December 2019, and (b) denying DACA recipients the right to contract for credit unless they apply by telephone and have a U.S. citizen or LPR co-signer after early-December 2019 constitute unlawful alienage discrimination under Section 1981 and unlawful alienage and immigration status discrimination under Sections 51(b) and 51.5 of the Unruh Civil Rights Act.

**PARTIES**

*Plaintiff Ruben Juarez*

7. Plaintiff Ruben Juarez is a non-U.S. citizen residing in the State of New York.

8. Mr. Juarez has had DACA, federal work authorization, and a valid SSN since November 2, 2012.

*Defendants*

9. Defendant Social Finance, Inc., also doing business as SoFi, is a Delaware corporation with its principal office or place of business at 234 First Street, San Francisco, CA 94105.

10. Defendant SoFi Lending Corp., also doing business as SoFi, is a California corporation with its principal office or place of business at 234 First Street, San Francisco, CA 94105.  SoFi Lending Corp. is a wholly owned subsidiary of Defendant Social Finance, Inc.

11. Together, Defendants are in the business of marketing, offering, and extending a variety of financial services and Loans to consumers.

12. Defendants, by soliciting, conducting, and transacting business in the state of California, engage in continuous, permanent, and substantial activity within the state.

13. Defendants are not federal enclaves and therefore are subject to Mr. Juarez's Section 1981 claim.

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over Mr. Juarez's Section 1981 claim pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Mr. Juarez's Unruh Act claim pursuant to 28 U.S.C. § 1367.

15. This Court has personal jurisdiction over SoFi.  There is general jurisdiction over SoFi, as SoFi's corporate headquarters are located in this District, SoFi conducts substantial business throughout this District and in the State of California, and SoFi employs hundreds of workers in the State of California.  SoFi has consented to this Court asserting personal jurisdiction over SoFi, as SoFi's Terms of Use require SoFi and its users to "submit to the personal and exclusive jurisdiction and venue

of the state and federal courts within San Francisco County, California."[1]

16. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because SoFi resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

18. Venue is also proper because SoFi's Terms of Use require SoFi and its users to submit to the venue of the state and federal courts located in this District. The same Terms of Use also state that the "Terms of Use and the License [to use the SoFi App] shall be governed in all respects by the substantive laws of the State of California, without regard to its provisions relating to conflict of law."[2]

19. Intradistrict assignment: Pursuant to N.D. Cal. Local Rules 3-2(c) and (d), intradistrict assignment to the San Francisco Division is proper because a substantial part of the events which give rise to the claims asserted herein occurred at SoFi's headquarters located in San Francisco County.

## BACKGROUND

20. On June 15, 2012, President Barack Obama announced that the Department of Homeland Security ("DHS") would no longer remove certain young immigrants under its authority to grant deferred action as embodied in DACA.

21. DACA's purpose, according to President Obama, was to "[stop] expel[ling] talented young people, who . . . [have] been raised as Americans; understand themselves to be part of this country . . . [and] who want to staff our labs, or start new businesses, or defend our country."[3]

22. DACA is a form of deferred action against removal, a discretionary grant of authorized stay by the federal government. Deferred action granted through DACA is valid for two years and is subject to renewal thereafter by the United States Citizenship and Immigrations Services ("USCIS")

---

[1] SoFi, Terms of Service, *available at* https://www.sofi.com/terms-of-use/ (last visited May 18, 2020).
[2] SoFi, Terms of Service, *available at* https://www.sofi.com/terms-of-use/ (last visited May 18, 2020).
[3] President Obama, Remarks by the President on Immigration (June 15, 2012), *available at* http://www.whitehouse.gov/the-press-office/2012/06/15/remarks-president-immigration (last visited May 18, 2020).

within DHS.

23. To be eligible for DACA, individuals must meet: (a) age and residency requirements (*i.e.*, have arrived to the United States as minors under the age of sixteen, continuously resided in the United States for five years preceding June 15, 2012, and not be above the age of thirty at the time of application); (b) educational or military service requirements (*i.e.*, high school degree or equivalent, or honorable service in the Coast Guard or Armed Forces); (c) criminal history requirements (*i.e.*, no felony or significant misdemeanor convictions, no series of minor misdemeanor offenses); and (d) not "otherwise pose[] a threat to national security or public safety[.]"[4]

24. DACA provides that persons who are granted deferred action will be eligible to obtain an Employment Authorization Document (an "EAD" or "federal work authorization") and an SSN. In other words, those granted deferred action and in possession of an EAD are legally authorized to work in the United States and can prove their identity.

25. As of December 31, 2019, USCIS had approved over 2.7 million initial and renewal requests for DACA.[5]

26. At the time of the filing of this Complaint, it is estimated that over 200,000 DACA recipients are working on the frontlines in the response to the COVID-19 pandemic as "essential critical infrastructure workers" as defined by DHS.[6] An estimated 29,000 DACA recipients are health care

---

[4] DHS, Exercising Prosecutorial Discretion with Respect to Individuals who Came to the United States as Children, June 15, 2012, *available at* https://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretion-individuals-who-came-to-us-as-children.pdf (last visited May 18, 2020).
[5] USCIS, Number of I-821D, Consideration of Deferred Action for Childhood Arrivals by Fiscal Year, Quarter, Intake, Biometrics and Case Status: 2012-2019 (December 31), *available at* https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/DACA_performancedata_fy2020_qtr1.pdf (last visited May 18, 2020).
[6] *See* Nicole Prchal Svajlenka, "A Demographic Profile of DACA Recipients on the Frontlines of the Coronavirus Response," Center for American Progress, April 6, 2020, *available at* https://www.americanprogress.org/issues/immigration/news/2020/04/06/482708/demographic-profile-daca-recipients-frontlines-coronavirus-response/ (last visited May 18, 2020); DHS, Guidance on the Essential Critical Infrastructure Workforce, March 19, 2020, *available at* https://www.cisa.gov/publication/guidance-essential-critical-infrastructure-workforce (last visited May 18, 2020).

workers, including 8,600 in California.[7]  There are an estimated 142,100 DACA recipients who work in food-related occupations or industries, including roughly 12,800 employed in the farming and agriculture industry, 11,600 employed in food manufacturing and processing roles, and 8,800 who work in food warehousing, transportation, and delivery.[8]  Another approximately 14,900 are employed in roles helping keep grocery stores open and operable.[9]

27. There is no federal or state law or regulation that restricts banks from providing financial products, including Loans, to customers because the customer is an alien.  Under federal law, alienage is merely one factor among many used to verify enough information to confirm the true identity of the customer.

28. For instance, the Federal Financial Institutions Examination Council ("FFIEC") provides uniform principles and standards to offer guidance for federal regulators.  The FFIEC annually publishes the Bank Secrecy Act/Anti-Money Laundering Examination Manual for Money Services, which contains a compliance program called the Customer Identification Program ("CIP"), as required by section 326 of the USA PATRIOT Act, 31 U.S.C. § 5318.  Pursuant to CIP, institutions providing financial services, including banks, must have a written policy in place to enable them to form a reasonable belief that they know the true identity of each customer.  The goal behind this requirement is to prevent the funding of terrorism both inside and outside of the United States.[10]

29. According to the Bank Secrecy Act/Anti-Money Laundering Examination Manual, a bank's CIP must contain account-opening procedures detailing the identifying information that must be obtained from each customer.  At a minimum, the bank must obtain the following information from each customer before opening an account: (a) name, (b) date of birth, (c) address, and (d) identification number (*e.g.*, Social Security number, taxpayer identification number, or an alien identification

---

[7]   *Id.*
[8]   *Id.*
[9]   *Id.*
[10]  *See* 12 C.F.R. 208.63(b), 211.5(m), 211.24(j) (Board of Governors of the Federal Reserve System); 12 C.F.R. 326.8(b) (Federal Deposit Insurance Corporation); 12 C.F.R. 748.2(b) (National Credit Union Administration); 12 C.F.R. 21.21 (Office of the Comptroller of the Currency); 12 C.F.R. 563.177(b) (Office of Thrift Supervision); and 31 C.F.R. 103.121 (FinCEN).

number).[11]

30. The bank's procedure must also describe when it will use documents, non-documentary methods, or a combination of both. Federal banking agencies expect that banks will review an unexpired government-issued form of identification from most customers. The identification must include evidence of the customer's nationality or residence and bear a photograph or similar safeguard.[12]

31. Compliance with the CIP is to ensure that a bank verifies enough information to form a reasonable belief that it knows the true identity of the customer.[13]

32. "Opening an account" and a financial services "customer" for purposes of the Bank Secrecy Act/Anti Money Laundering Examination Manual for Money Services includes an individual who has applied for a loan.[14]

## STATEMENT OF FACTS

*Plaintiff Juarez*

33. Mr. Juarez is a Mexican national residing in the State of New York who is 31 years-old. Mr. Juarez has lived in the U.S. since approximately September 1999.

34. On October 25, 2012, Mr. Juarez obtained DACA. Around the same time, Mr. Juarez obtained an EAD, and on November 2, 2012, he received an SSN.

35. From approximately September 2010 through approximately May 2014, Mr. Juarez attended Lehman College of the City University of New York, where he earned a Bachelor of Science degree in Accounting. Mr. Juarez incurred substantial expenses for tuition and other required materials as an undergraduate student.

36. From approximately September 2014 through approximately February 2016, Mr. Juarez attended the Gabelli School of Business at Fordham University, where he earned a Master of Science

---

[11] Fed. Fin. Inst. Examination Council, Bank Secrecy Act/Anti-Money Laundering Examination Manual (2014) at 48-49, *available at* https://bsaaml.ffiec.gov/docs/manual/06_AssessingComplianceWithBSARegulatoryRequirements/01.pdf (last visited May 18, 2020).
[12] *Id.* at 49.
[13] *Id.*
[14] *Id.* at 47-48.

degree in Global Finance. Mr. Juarez incurred substantial expenses for tuition and required materials as a Master's student at Fordham University.

37. Following his graduation from his Master's program in February 2016, Mr. Juarez secured a full-time job as an Analyst at JPMorgan Chase & Co. in New York City. Mr. Juarez has worked at several other financial and investment firms, including Edwards Jones and T3 Trading Group. Mr. Juarez is currently employed by Macro Consultants, LLC as a Consultant in its Strategic Advisory Services Group.

38. In order to finance his education, Mr. Juarez obtained private student loans. On approximately August 1, 2014, Mr. Juarez obtained a private student loan in the amount of $40,000 from Discover Bank with the help of a U.S. citizen family member who acted as a co-signer. The loan had a fixed interest rate of 8.6%.

39. In 2016, Mr. Juarez began to receive promotional material from SoFi offering student loan refinancing and related services. SoFi offered refinancing at low interest rates, such as 3-4%.

40. Mr. Juarez sought refinancing for his student loan because the 8.6% interest rate he was paying was higher than the rates SoFi was offering. It was also higher than the rates that his peers with similar credit scores and incomes, but without DACA status, were paying for their student loans.

41. In approximately November 2016, Mr. Juarez first sought to refinance his student loan debt with SoFi. At the time, Mr. Juarez had approximately $38,000 in student loan debt.

42. Mr. Juarez visited SoFi's website to begin the process. After providing certain required information, such as his name and email address, the SoFi website prompted Mr. Juarez to indicate whether he was a U.S. citizen, LPR, or visa-holder. Because Mr. Juarez is not a U.S. citizen, LPR, or visa-holder, SoFi's online application process did not allow him to complete and submit his application to refinance his student loans. As a result, Mr. Juarez was denied the ability to contract for student loan refinancing with SoFi.

43. Mr. Juarez continued to receive student loan refinancing offers from SoFi through 2017, 2018, and 2019 promoting interest rates as low as 3%.

44. On several other occasions in 2017, 2018, and 2019, Mr. Juarez again went to SoFi's website to attempt to apply for student loan refinancing hoping that SoFi had changed its eligibility

7

COMPLAINT FOR
VIOLATIONS OF SECTION 1981
AND CA STATE LAW

policy for DACA recipients. Specifically, Mr. Juarez attempted to apply to SoFi to refinance his student loans on June 13, 2017, December 8, 2018, and December 15, 2019. Each time, Mr. Juarez was unable to complete SoFi's online application, which rejected him automatically because he was not a U.S. citizen, LPR, or visa-holder. On each of these occasions, Mr. Juarez was again denied an opportunity to contract for student loan refinancing with SoFi.

45. Mr. Juarez still has approximately $32,000 in student loan debt that he would like to refinance at a lower rate. Although SoFi replaced its blanket ban against lending to DACA recipients in December 2019 to allow for lending to those with a creditworthy U.S. citizen or LPR co-signer, Mr. Juarez no longer has access to a qualifying co-signer. Therefore, SoFi is still excluding Mr. Juarez from refinancing his student loans, despite his own excellent creditworthiness.

46. Mr. Juarez has suffered harm as a result of SoFi's discriminatory policy and practice of making DACA recipients ineligible for loans on the same terms as U.S. citizens and LPRs. Specifically, Sofi has denied Mr. Juarez the opportunity to contract for its advertised rates of 3-4%, boxing him into substantially higher interest rates of approximately 8.6%. This is despite the fact that his income and credit score would have otherwise allowed him to qualify for SoFi's advertised rates.

### *SoFi's Policies Are Unlawful and Cause Continuing Harm*

47. On November 18, 2019, Mr. Juarez sent SoFi correspondence explaining that SoFi's policy of refusing to make DACA recipients eligible for Loans violated civil rights laws.

48. On December 4, 2019, SoFi responded to Mr. Juarez's letter by changing its lending policies to make DACA recipients eligible for Loans so long as they apply by telephone with a creditworthy U.S. citizen or LPR co-signer.

49. SoFi's requirement that DACA recipients apply by telephone only with U.S. citizen or LPR co-signers is not imposed on applicants who are U.S. citizens, LPRs, or certain visa-holders. Applicants who are U.S. citizens, LPRs, or certain visa-holders may apply online, a process far more convenient and less time-intensive and burdensome than applying by telephone, and are required to have co-signers only where an individualized assessment of their creditworthiness and credit risk suggests that one is necessary.

50. SoFi's current policy ignores the actual creditworthiness of DACA recipients and whether their objective credit risk merits a co-signer requirement. Instead, SoFi requires that DACA recipients have co-signers based solely on their status as non-citizens with DACA, which is unlawful alienage and immigration status discrimination.

51. There is an actual and substantial controversy between Mr. Juarez and SoFi.

## CLASS ACTION ALLEGATIONS

52. Mr. Juarez brings class allegations under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of two nationwide classes. First, Mr. Juarez seeks to certify a Section 1981 class pursuant to Fed. R. Civ. P. 23(b)(2) with respect to the claims of Section 1981 Class Members (as defined below). Second, Mr. Juarez seeks to certify an Unruh Act class pursuant to Fed. R. Civ. P. 23(b)(3) with respect to the claims of Unruh Act Class Members.

53. Section 1981 Class Members are defined as all non-United States citizens who resided in the United States and had DACA at the time they applied and were denied or unsuccessfully sought to apply for any SoFi Loan from May 19, 2017 through the date of final judgment in this action.

54. Unruh Act Class Members are defined as all non-United States citizens who resided in the United States and had DACA at the time they applied and were denied or unsuccessfully sought to apply for any SoFi Loan from May 19, 2018 through the date of final judgment in this action.

55. Section 1981 Class Members and Unruh Act Class Members (collectively, "Class Members") are so numerous that joinder of all of them is impracticable. SoFi offers Loans nationwide, and USCIS has approved over 2.7 million initial and renewal requests for DACA. Given DACA's age and education requirements, many DACA recipients have (a) recently attended, or are currently attending, an undergraduate or graduate university in the U.S.; (b) started businesses and other entrepreneurial ventures; and/or (c) sought mortgages and loans to improve their homes and help them build their and their family's lives. Mr. Juarez does not know the precise number of Class Members as this information is in SoFi's possession.

56. There are questions of law and fact common to Mr. Juarez and Class Members, and these questions predominate over any questions affecting only individual members. Common questions include, for each class, among others: (1) whether SoFi previously maintained policies that barred Mr.

COMPLAINT FOR
VIOLATIONS OF SECTION 1981
AND CA STATE LAW

Juarez and Class Members from obtaining Loans because of their alienage or immigration status; (2) whether SoFi currently maintains policies that bar Mr. Juarez and Class Members from obtaining Loans unless they have a creditworthy U.S. citizen or LPR co-signer because of their alienage or immigration status and unless they apply by telephone; (3) whether SoFi's policies as set forth violate Section 1981 and the Unruh Act; (4) whether Mr. Juarez and the Class Members suffered harm by reason of SoFi's unlawful policies; (5) whether Mr. Juarez and Class Members are entitled to statutory damages under the Unruh Act; (6) whether Mr. Juarez and Class Members are entitled to punitive damages; (7) whether Mr. Juarez and Class Members are entitled to equitable and injunctive relief, and, if so, what equitable and injunctive relief is warranted; and (8) the scope of a resulting permanent injunction.

57. Mr. Juarez's claims under Section 1981 and the Unruh Civil Rights Act are typical of the claims of the Class Members: (1) Mr. Juarez has been within the jurisdiction of the United States and held DACA, federal work authorization, and a valid SSN at all relevant times; (2) Mr. Juarez applied or attempted to apply for a loan with SoFi; (3) Mr. Juarez was denied an opportunity to contract with SoFi because of his alienage or immigration status under SoFi's policies that initially categorically barred DACA recipients and later restricted eligibility to DACA recipients with a creditworthy U.S. citizen or LPR co-signer.  Mr. Juarez's claims are substantially shared by every Class Member, as these claims arise from the same course of conduct by SoFi, and the relief sought is common.

58. Mr. Juarez will also fairly and adequately represent and protect the interests of the Class Members.  Mr. Juarez has no conflict with any Class Member and is committed to the goal of having SoFi rectify the harm that its policies have caused in the past and change its current business practices to stop discriminating against Mr. Juarez and other DACA recipients.

59. Mr. Juarez has retained counsel competent and experienced in complex discrimination class actions.

60. The universe of persons affected by SoFi's unlawful policies is ascertainable through SoFi's company records, including, for instance, its website records, logs, and data, as well as through self-identification of Class Members through objective identifying factors, such as DACA status, a valid SSN, and some evidence of having applied or sought to apply for Loans with SoFi.

*Certification Under Fed. R. Civ. P. 23(b)(2)*

61. Class certification of Mr. Juarez's and Class Members' Section 1981 claim is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because SoFi has acted and/or refused to act on grounds generally applicable to all Class Members, making appropriate declaratory, equitable, and injunctive relief with respect to Mr. Juarez and the Class Members as a whole.  SoFi has, in the past, excluded Class Members outright from obtaining Loans due to their alienage or immigration status.  SoFi currently excludes Class Members from obtaining Loans unless they apply with a creditworthy U.S. citizen or LPR co-signer, a requirement not imposed on U.S. citizen, LPR, and visa-holder applicants.  Class Members are entitled to declaratory, equitable, and injunctive relief to end SoFi's common, unfair, and discriminatory policies.

62. Class certification of Mr. Juarez's and Class Members' claims under the Unruh Civil Rights Act is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members is impracticable.  The Class Members have been damaged and are entitled to recovery of statutory penalties under the Unruh Civil Rights Act and other damages, not including actual damages, because of SoFi's common, unfair, and discriminatory policies.  Damages are capable of measurement on a classwide basis.  The propriety and amount of punitive damages are based on SoFi's conduct, making these issues common among Class Members.  Mr. Juarez and the Class Members will rely on common evidence to resolve their legal and factual questions, including SoFi's applicable policies and practices during the relevant period.  There are no pending actions raising similar claims.  SoFi engages in continuous, permanent, and substantial activity in California.  There will be no undue difficulty in the management of this litigation as a class action.

**FIRST CLAIM FOR RELIEF**
**Alienage Discrimination**
**(42 U.S.C. § 1981)**

63. Mr. Juarez incorporates by reference the allegations in all preceding paragraphs.

64. Mr. Juarez brings this claim on his own behalf and on behalf of all Class Members.

65. Mr. Juarez is a person within the jurisdiction of the United States.

66. Mr. Juarez is a non-citizen with DACA, federal work authorization, and a valid SSN.

67. Mr. Juarez has the right to make and enforce contracts in the United States and is entitled to the full and equal benefits of the law.

68. Before early-December 2019, SoFi intentionally discriminated against Mr. Juarez and Class Members due to their alienage status by making them ineligible to contract for Loans while making U.S. citizens and LPRs eligible to contract for Loans.

69. After early-December 2019, SoFi continued intentionally discriminating against Mr. Juarez and Class Members due to their alienage status by requiring them to meet conditions based solely on their alienage status to be eligible to contract for Loans. Such conditions include a requirement to apply by telephone only and a requirement to apply with a U.S. citizen or LPR co-signer. These conditions are not imposed on U.S. citizen or LPR applicants.

70. SoFi's intentional discrimination against Mr. Juarez and Class Members interfered with their right to make and enforce contracts for credit.

71. SoFi's policies of making Mr. Juarez and Class Members ineligible for Loans and forcing them to meet additional requirements to be eligible for Loans based solely on their alienage harmed them and constitute unlawful alienage discrimination in the making and enforcing of contracts in violation of 42 U.S.C. § 1981.

72. Mr. Juarez and Class Members have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive and equitable relief sought in this action is the only means of securing complete and adequate relief. Plaintiff and the Class Members he seeks to represent are now suffering, and will continue to suffer, irreparable injury from SoFi's discriminatory acts and omissions.

**SECOND CLAIM FOR RELIEF**
**Violation of the Unruh Civil Rights Act**
**(California Civil Code §§ 51 and 52 et seq.)**

73. Mr. Juarez incorporates by reference the allegations in all preceding paragraphs.

74. Mr. Juarez brings this claim on his own behalf and on behalf of all Class Members.

75. Mr. Juarez is entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments in California of every kind regardless of his

immigration status and no business establishment of any kind in California whatsoever may refuse to contract with Mr. Juarez because of his immigration or alienage status.

76. SoFi is a business establishment under the Unruh Act, because it has a fixed location of business in California and it has an online place of business that sells products and services to consumers throughout California and nationwide.

77. The Unruh Act applies to business transactions and services that are conducted via the internet, as well as internet-related conduct that is related to the activities of traditional brick-and-mortar establishments that have fixed, traditional presences.

78. SoFi's lending policies, including the policies that deprived DACA recipients of the opportunity to contract for Loans on the same terms as U.S. citizens and LPRS, were developed in California and all of its decision-making as to Loan applicants occurs in California because its servers and headquarters are located there.  Accordingly, because the the conduct that creates liability in this matter occurred in California, the Unruh Act – California law – should govern the conduct.

79. Additionally, although Mr. Juarez and Class Members are located throughout the United States, they bring this claim under the Unruh Act because SoFi's Terms of Use require California law to "govern[] in all respects . . . without regard to its provisions relating to conflict of laws."[15]

80. Before early-December 2019, SoFi intentionally discriminated against Mr. Juarez and Class Members due to their alienage or immigration status by making them ineligible to contract for Loans while making U.S. citizens and LPRs eligible to contract for Loans.  In doing so, SoFi denied them the full and equal services of its business.

81. After early-December 2019, SoFi continued intentionally discriminating against Mr. Juarez and Class Members due to their alienage or immigration status by requiring them to meet conditions based solely on their alienage status to be eligible to contract for Loans.  Such conditions include a requirement to apply by telephone only and a requirement to apply with a U.S. citizen or LPR co-signer.  These conditions are not imposed on U.S. citizen or LPR applicants.  In doing so, SoFi denied them the full and equal services of its business.

---

[15] SoFi, Terms of Service, *available at* https://www.sofi.com/terms-of-use/ (last visited May 18, 2020).

82. SoFi's policies of excluding DACA recipients from credit and then requiring them to have a co-signer upfront and apply by telephone only because of their alienage or immigration status harmed Mr. Juarez and the Class Members and constitutes unlawful discrimination in violation of Sections 51(b) and 51.5 of the Unruh Civil Rights Act.

83. Pursuant to the Section 52(a) of the Unruh Civil Rights Act, Mr. Juarez and Class Members are entitled to statutory damages of up to three times the amount of actual damages suffered per violation, but no less than $4,000, and attorneys' fees. Pursuant to Section 52(c) of the Unruh Civil Rights Act, Mr. Juarez and Class Members are also entitled to injunctive and other equitable relief against such unlawful practices in order to prevent future damages, for which there is no adequate remedy at law, and to avoid a multiplicity of lawsuits.

**PRAYER FOR RELIEF**

**WHEREFORE**, Mr. Juarez and Class Members pray for relief as follows:

84. Certification of a class pursuant to Fed. R. Civ. P. 23(b)(2) with respect to Mr. Juarez's and Section 1981 Class Members' claims under Section 1981;

85. Certification of a class pursuant to Fed. R. Civ. P. 23(b)(3) with respect to Mr. Juarez's and Unruh Act Class Members' claims under the Unruh Civil Rights Act;

86. Designation of Mr. Juarez as the representative on behalf of both classes and all Class Members;

87. Designation of Mr. Juarez's counsel of record as Class Counsel;

88. A declaratory judgment that the practices complained of herein are unlawful and violate Section 1981 and Sections 51(b) and 51.5 of the Unruh Civil Rights Act;

89. A preliminary and permanent injunction against SoFi and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs and usages set forth herein;

90. All damages sustained as a result of SoFi's conduct, according to proof;

91. Statutory damages to the extent allowable by law;

92. Exemplary and punitive damages in an amount commensurate with SoFi's ability to pay and to deter future conduct;

93. Injunctive remedies, including restitution;

94. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

95. Pre-judgment and post-judgment interest, as provided by law; and

96. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Washington, D.C.  
May 19, 2020

Respectfully submitted,

By: /s/ *Mikael A. Rojas*  
**OUTTEN & GOLDEN LLP**

Mikael A. Rojas (Cal. Bar No. 309626)  
OUTTEN & GOLDEN LLP  
601 Mass. Avenue NW, Suite 200W  
Washington, D.C. 20001  
Telephone: (202) 847-4400  
Facsimile (646) 509-2008  
mrojas@outtengolden.com

Moira Heiges-Goepfert (Cal. Bar No. 326861)  
OUTTEN & GOLDEN LLP  
One California Street, 12th Floor  
San Francisco, California 94111  
Telephone: (415) 638-8800  
Facsimile: (415) 638-8810  
mhg@outtengolden.com

Ossai Miazad*  
Michael N. Litrownik*  
OUTTEN & GOLDEN LLP  
685 Third Avenue, 25th Floor  
New York, NY 10017  
Telephone: (212) 245-1000  
Facsimile: (646) 509-2060  
om@outtengolden.com  
mlitrownik@outtengolden.com

Ivan Espinoza-Madrigal*  
Oren Nimni*  
LAWYERS FOR CIVIL RIGHTS  
61 Batterymarch Street, 5th Floor  
Boston, MA 02110  
Telephone: (617) 482-1145

COMPLAINT FOR  
VIOLATIONS OF SECTION 1981  
AND CA STATE LAW

Facsimile: (617) 482-4392
iespinoza@lawyersforcivilrights.org
onimni@lawyersforcivilrights.org

*Pro hac vice* application forthcoming
**Attorneys for Plaintiffs and the proposed Class**