UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN JUAREZ, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>SOCIAL FINANCE, INC., et al.,<br><br>    Defendants. | Case No. 20-cv-03386-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 68 |

Pending before the Court is the motion to compel arbitration filed by Defendants Social Finance Inc. and Social Finance Lending Corp (collectively, "SoFi"). Dkt. No. 68 ("Mot."). SoFi seeks to compel Plaintiff Emiliano Galicia's claims to arbitration. *Id.* The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to compel.

**I.   BACKGROUND**

Plaintiffs Ruben Juarez and Calin Constantin Segarceanu initially filed this putative class action against SoFi on May 19, 2020. *See* Dkt. No. 1. On May 3, 2021, Plaintiffs filed a second amended complaint, adding Plaintiffs Emiliano Galicia and Josue Jimenez to the case. Dkt. No. 62 ("SAC"). As relevant to the pending motion, Plaintiffs allege that Mr. Galicia was born in Mexico and has lived in the United States since 1994. *See id.* at ¶ 116. In approximately 2012, Mr. Galicia obtained Deferred Action for Childhood Arrivals ("DACA") status.[1] In August 2019, Mr. Galicia applied for a personal loan from SoFi to fund his real estate consulting business. *Id.* at

---

[1] DACA is a form of deferred action against removal, a discretionary grant of authorized stay by the federal government. *See* SAC at ¶¶ 4, 34–42.

¶¶ 120–23. However, SoFi denied his loan application because of his DACA status. *See id.* at ¶ 124.

Plaintiffs allege that since this initial application, Mr. Galicia has continued to receive promotional material from SoFi and "periodically checked to see whether SoFi changed its policy with respect to lending to DACA recipients." *See id.* at ¶ 128. In April 2021, Mr. Galicia also called SoFi's customer service number "to indicate his willingness and intent to apply for a personal loan and to inquire as to whether SoFi had changed its eligibility policy for DACA recipients." *See id.* at ¶ 130. The customer service representative, however, indicated that DACA recipients were still ineligible unless they had a co-signer who was a U.S. citizen or lawful permanent resident. *See id.* As a result, Mr. Galicia did not complete a new loan application because he believed doing so would be futile. *See id.* at ¶ 131. Plaintiffs allege that SoFi's policies and practices to deny loans to DACA recipients constitute unlawful discrimination. *See id.* at ¶¶ 7, 132, 152–53. Based on these facts, Mr. Galicia asserts two causes of action for (1) alienage discrimination, in violation of 42 U.S.C. § 1981; and (2) discrimination, in violation of California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51 *et seq*. *See id.* at ¶¶ 178–207.

SoFi now moves to compel Mr. Galicia's two claims to arbitration. *See* Mot. SoFi previously moved to compel arbitration as to Plaintiff Juarez's same claims for violations of § 1981 and the Unruh Civil Rights Act. *See* Dkt. No. 38. The Court denied that motion. *See* Dkt. No. 56.

**II.   LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (noting federal policy favoring arbitration); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (same). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. This federal policy is "simply to ensure the enforceability,

1   according to their terms, of private agreements to arbitrate." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).  Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.*

When a party moves to compel arbitration, the court must determine (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  In either instance, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citing 9 U.S.C. § 2).

### III.     DISCUSSION

Much as it did in its prior motion to compel, SoFi states its records indicate that Mr. Galicia expressly consented to arbitration in 2019 when he first submitted a loan application.  *See* Mot. at 3–6.  SoFi explains that to submit an online loan application, Mr. Galicia had to register as a new user and acknowledge and agree to be bound by several agreements, including an arbitration agreement.  *See* Dkt. No. 68-1 ("Thompson Decl.") at ¶¶ 5–6, 8, & Ex. A–C.  SoFi explains that without affirmatively checking the "I Agree" box manifesting his consent to the arbitration agreement, Mr. Galicia could not have signed in or proceeded with any loan application on the website.  *See id.* at ¶ 6; *see also* Thompson Decl., Ex. A.  SoFi states that according to its records, Mr. Galicia registered on SoFi's website on August 7, 2019, and consented to the arbitration agreement as part of that registration process.  *See id.* at ¶ 7, & Ex. C.  SoFi's records also show that Mr. Galicia "started an application" for a personal loan on August 7, 2019.  *See id.* at ¶ 11.

The arbitration agreement is the same as the agreement that Mr. Juarez purportedly agreed to in 2016.  It states:

> [A]ny claim, dispute or controversy arising out of or related to (i) my registration on SoFi's website, (ii) my submission of information to

> SoFi in connection with any non-mortgage loan offered by SoFi, (iii) my application for any non-mortgage loan offered by SoFi, (iv) my participation in SoFi's career services or entrepreneur program, or (v) the disclosures provided to me by SoFi in connection with any non-mortgage loan that SoFi offers (collectively, "Claim") shall be, at my or your election, submitted to and resolved on an individual basis by binding arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA") before the American Arbitration Association ("AAA") under its Consumer Arbitration Rules ("AAA Rules") in effect at the time the arbitration is brought . . . .

*See* Thompson Decl., Ex. B. SoFi contends that Mr. Galicia's claims related to his August 2019 application "fall squarely within [the] scope" of the arbitration agreement. *See* Mot. at 1, 10–11. SoFi further urges that Mr. Galicia's claims related to his April 2021 call to SoFi, and any other communications with SoFi, should be compelled to arbitration based on the doctrine of equitable estoppel. *See id.* at 12–14.

### A. 2019 Application

In their opposition brief,[2] Plaintiffs do not appear to challenge that Mr. Galicia's claims arising from his 2019 application fall within the scope of the arbitration agreement. *See generally* Dkt. No. 74 ("Opp."). And unlike their opposition to the motion to compel Mr. Juarez's claims, Plaintiffs do not explicitly disclaim reliance on Mr. Galicia's 2019 application. *Compare* Opp. at 5–12 *with* Dkt. No. 41 at 8, & n.6. Rather, Plaintiffs only challenge whether to compel arbitration as to Mr. Galicia's claims arising from subsequent interactions with SoFi. *See* Opp. at 6–7, 11. Based on Plaintiffs' opposition brief, however, the Court assumes they do not intend to rely on Mr. Galicia's 2019 loan application. It appears clear that any claims relying on the 2019 loan application would be subject to the arbitration agreement given SoFi's internal records and the plain language of the arbitration agreement. The Court therefore **GRANTS** SoFi's motion to compel arbitration as to Mr. Galicia's claims arising from his 2019 loan application.

//

---

[2] The Court notes that in reviewing Plaintiffs' opposition brief, it is apparent that counsel did not comply with Civil L.R. 3-4(c), which requires 12-point type for all text, including footnotes. The Court expects counsel to scrupulously comply with the Local Rules and the Court's standing orders in all future filings. Any future noncompliance may be the basis for sanctions, filings being stricken, or both.

### B. 2021 Inquiry

The Court has already found that SoFi's arbitration agreement "is limited in scope" and only "applies on a transaction-by-transaction basis." *See* Dkt. No. 56 at 8. It therefore does not extend to any future registrations, submissions, or applications. *See id.* To the extent that Mr. Galicia's claims are premised, at least in part, on an April 2021 inquiry that he made over the telephone (a year and a half after Mr. Galicia's August 2019 application), that is not covered by the plain terms of the 2019 arbitration agreement. SoFi acknowledges the Court's prior ruling, but contends that Mr. Galicia's claims should still be compelled to arbitration under the doctrine of equitable estoppel. *See* Mot. at 12–14, & n.5.

In California, "[e]quitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1129 (9th Cir. 2013) (quotation omitted). As relevant here, "'equitable estoppel applies only if the plaintiffs' claims against the nonsignatory are dependent upon, or inextricably bound up with, the obligations imposed by the contract plaintiff has signed with the signatory defendant.'" *Id.* (quoting *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 229–30 (Cal. Ct. App. 2009). SoFi's arguments appear to be twofold.

*First*, SoFi contends that it is unfair to allow Mr. Galicia's claims to proceed in this Court because Plaintiffs intentionally circumvented the arbitration provision by contacting SoFi over the phone, rather than through an online application. *See* Mot. at 12. SoFi notes that the only way to submit a loan application is online, and this process requires users to agree to an arbitration provision to proceed. *See id.* SoFi thus suggests that Mr. Galicia's telephone communications were simply pretextual and intended to evade the arbitration provision. *Id.* Yet elsewhere in the amended complaint, Plaintiffs allege that once a prospective applicant indicates that he is not a U.S. citizen, legal permanent resident, or visa holder, he cannot complete and submit an online loan application. *See* SAC at ¶¶ 75, 81. Plaintiffs further allege that as of December 2019, DACA recipients could only apply for loans with SoFi by telephone—not online. *See id.* at ¶ 84. SoFi's own records show that Mr. Galicia *started* an online application in 2019. *See* Thompson Decl. at ¶ 11, & Ex. D. Plaintiffs have therefore plausibly alleged that it would have been futile for Mr.

5

Galicia to apply online for a personal loan. *See* SAC at ¶ 131. In any event, SoFi offers no case law—and the Court is aware of no authority—supporting the application of the doctrine of equitable estoppel under such circumstances.[3]

*Second*, SoFi contends that Mr. Galicia's claims are premised on SoFi's Terms of Use, which reference the arbitration agreement, such that Mr. Galicia must be bound by the arbitration agreement. *See* Mot. at 13–14. The Court is not persuaded. SoFi points to a single sentence in the amended complaint, which states:

> [A]lthough Plaintiffs and Class Members are located throughout the United States, they bring this claim under the Unruh Act because SoFi's Terms of Use require California law to "govern[] in all respects . . . without regard to its provisions relating to conflict of laws."

*See id.* (citing SAC at ¶ 201, & n.34). However, as the California Court of Appeal has explained, "merely mak[ing] reference to an agreement with an arbitration clause is not enough." *Goldman*, 173 Cal. App. 4th at 218 (quotation omitted). Rather, the plaintiffs "must rely on the terms of the written agreement in asserting [their] claims." *Id.* (quotation omitted). Here, Mr. Galicia is a California resident, so he does not need to rely on any choice of law provision to support his Unruh Civil Rights Act claim. *See* SAC at ¶¶ 17, 202. Moreover, Mr. Galicia's claims are not based on SoFi's Terms of Use generally or the arbitration agreement more specifically. Rather, Plaintiffs allege that SoFi's policies and practices intentionally discriminate against Mr. Galicia and other putative class members based on their DACA status. *See* SAC at ¶¶ 203–206. Plaintiffs allege that prior to December 2019, DACA recipients were ineligible to contract for loans with SoFi, and after December 2019, DACA recipients could only contract for loans over the telephone and with a co-signer. *See id.* at ¶¶ 203–204. Plaintiffs do not contend that these policies or practices were contained within SoFi's Terms of Use. In short, Mr. Galicia does not seek to enforce the terms of the Terms of Use or the arbitration agreement, and therefore he has not

---

[3] To the extent SoFi believes that Plaintiffs cannot support a § 1981 or Unruh Civil Rights Act claim based on these telephone communications, that argument would be properly raised via a motion to dismiss or motion for summary judgment, not a motion to compel arbitration.

triggered any estoppel based on his claims.

SoFi's motion to compel arbitration is therefore **DENIED** on this basis.

## IV.  CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to compel arbitration.  The Court **GRANTS** SoFi's motion to compel arbitration as to Mr. Galicia's claims arising from his 2019 loan application, to the extent Plaintiffs intend to pursue such claims, but otherwise **DENIES** the motion in its entirety.  The case schedule at Dkt. No. 66 remains in place.  Plaintiffs are further **DIRECTED** to file a short statement of two pages or less by August 31, 2021, indicating whether they intend to pursue in arbitration Mr. Galicia's claims based on his 2019 loan application.

**IT IS SO ORDERED.**

Dated: August 24, 2021

HAYWOOD S. GILLIAM, JR.
United States District Judge