Moira Heiges-Goepfert (Cal. Bar No. 326861)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
New York, NY 10017
Telephone: (415) 223-7847
Facsimile:  (415) 638-8810
mhg@outtengolden.com

Ossai Miazad (admitted pro hac vice)
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
om@outtengolden.com

Sophia L. Hall (*pro hac vice*)
**LAWYERS FOR CIVIL RIGHTS**
61 Batterymarch Street, 5th Floor
Boston, MA 02110
Telephone: (617) 482-1145
Facsimile: (617) 482-4392
shall@lawyersforcivilrights.org

*Attorneys for Plaintiffs Ruben Juarez, Calin Constantin Segarceanu, Emiliano Galicia, Josue Jimenez, and The Proposed Class.*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| RUBEN JUAREZ, CALIN CONSTANTIN SEGARCEANU, EMILIANO GALICIA, and JOSUE JIMENEZ, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>SOCIAL FINANCE, INC. d/b/a SOFI, and SOFI LENDING CORP. d/b/a SOFI,<br><br>          Defendants. | Case No. 4:20-cv-03386 (HSG)<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**<br><br>Date: June 2, 2022<br>Time: 2:00 PM<br>Courtroom: 2<br><br>Honorable Haywood S. Gilliam, Jr. |

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY SETTLEMENT
APPROVAL

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on June 2, 2022, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 – 4th Floor of this Court's Oakland Courthouse, located at 1301 Clay Street, Oakland, California, Plaintiff Ruben Juarez, individually (the "Individual Plaintiff"), and Plaintiffs Calin Constantin Segarceanu, Emiliano Galicia and Josue Jimenez, individually and as class representatives on behalf of the Class (together "the Class Representatives"), will, and hereby do, move this Court for the following relief with respect to the Settlement Agreement and Release (attached as Exhibit A to the Declaration of Ossai Miazad in Support of Motion for Preliminary Settlement Approval Order) with Defendants Social Finance, Inc. d/b/a SoFi and SoFi Lending Corp. d/b/a SoFi (together "SoFi"):

1. that the Court certify, for settlement purposes only, a settlement class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3);
2. that the Court preliminarily approve the proposed Settlement as fair, reasonable and adequate under Rule 23 of the Federal Rules of Civil Procedure;
3. that the Court appoint Plaintiffs Calin Constantin Segarceanu, Emiliano Galicia and Josue Jimenez as representatives of the Class;
4. that the Court appoint Plaintiffs' attorneys as Class Counsel;
5. that the Court approve mailing to the Class Members the proposed Class Notice and the establishment of a settlement website;
6. that the Court appoint Rust Consulting as the Settlement Administrator; and
7. that the Court schedule a hearing for final approval of the Settlement at least one hundred forty (140) days after entry of the Preliminary Approval Order.

This Motion is made on the grounds that the Settlement is the product of arms-length, good-faith negotiations; is fair, reasonable, and adequate to the Class; and should be preliminarily approved, as discussed in the attached memorandum.

The Motion is based on: this notice; the following memorandum in support of the motion; the Miazad Declaration (which annexes a copy of the Settlement); the Court's record of this action; all matters of which the Court may take notice; and oral and documentary evidence presented at the hearing on the motion. This motion is unopposed by SoFi.

-ii-

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY SETTLEMENT
APPROVAL

1

2    Dated: April 20, 2022                        Respectfully submitted,

3

4                                                 By: ___/s/ *Ossai Miazad*_____
                                                  Ossai Miazad (*admitted pro hac vice*)
5                                                 **OUTTEN & GOLDEN LLP**
                                                  685 Third Avenue, 25th Floor
6                                                 New York, NY 10017
                                                  Telephone: (212) 245-1000
7                                                 Facsimile: (646) 509-2060
                                                  om@outtengolden.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iii-

## **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ................................... 2

    A.      SoFi's Lending Policies Made DACA Recipients and CPRs
        Ineligible, or Subject to Heightened Requirements, for Credit. ..................... 2

    B.      Procedural History ................................................................................. 3

III.    THE PROPOSED SETTLEMENT .............................................................. 4

    A.      The Settlement Classes ......................................................................... 4

    B.      Comparison of Settlement Classes with Those Proposed in the
        Complaint ............................................................................................... 6

    C.      Settlement Overview ............................................................................ 7

        1.      Programmatic Relief .................................................................. 7

        2.      Monetary Relief ........................................................................ 7

        3.      Class Representative and Individual Plaintiff Incentive
            Awards ..................................................................................... 10

        4.      Attorneys' Fees and Costs ....................................................... 11

        5.      Settlement Administration ....................................................... 12

        6.      Cy Pres .................................................................................... 14

IV.     ARGUMENT .............................................................................................. 14

    A.      Certification of the Rule 23 Classes Is Proper. ................................. 15

        1.      Rule 23(a) Is Satisfied ............................................................ 15

        2.      Certification Is Proper Under Rule 23(b)(3). .......................... 17

        3.      Plaintiffs' Counsel Should Be Appointed as Class
            Counsel. ................................................................................... 18

    B.      The Settlement Is Fair, Reasonable, And Adequate. ......................... 18

        1.      Plaintiffs' Case Faced Significant Hurdles on Liability
            and Class Certification. ........................................................... 19

        2.      The Settlement Amount Is Appropriate. ................................. 20

-iv-

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY SETTLEMENT
APPROVAL

3.   The Extent of Discovery Supports Settlement...................................21

4.   Counsel's Experience and Views Support Approval.......................22

5.   The Parties Participated in Arms-Length Negotiations Before an Experienced Neutral Mediator. ..........................................22

C.   The Proposed Notice Is Clear and Adequate. ................................................23

V.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED. .........................24

VI.   CONCLUSION..........................................................................................................25

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**CASES**                                                   **PAGE(S)**

4

*Abdullah v. U.S. Sec'y Assocs.*,
   731 F.3d 952 (9th Cir. 2013) ................................................15

5

*Amchem Prods., Inc. v. Windsor*,
6    521 U.S. 591 (1997).............................................16, 17

7

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013).............................................17

8

9

*Betancourt v. Advantage Human Resourcing, Inc.*,
   No. 14 Civ. 01788, 2016 U.S. Dist. LEXIS 10361 (N.D. Cal. Jan. 28, 2016) .................19, 20

10

*In re Bluetooth Headset Prods. Liab. Litig.*,
11    654 F.3d 935 (9th Cir. 2011) ................................................11

12

*Bond v. Ferguson Enters.*,
   No. 09 Civ. 1662, 2011 U.S. Dist. LEXIS 70390 (E.D. Cal. June 30, 2011)........................13

13

14

*Bower v. Cycle Gear, Inc.*,
   No. 14 Civ. 02712-HSG, 2016 U.S. Dist. LEXIS 112455 (N.D. Cal. Aug. 23,
15    2016) ................................................11

16

*Cancilla v. Ecolab, Inc.*,
   No. 12 Civ. 3001, 2015 U.S. Dist. LEXIS 106249 (N.D. Cal. Aug. 12, 2015)......................18

17

18

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................19

19

*Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*,
20    No. 15 Civ. 224, 2016 U.S. Dist. LEXIS 10277 (N.D. Cal. Jan. 25, 2016) .........................15

21

*Contreras v. Worldwide Flight Servs.*,
   No. 18 Civ. 6036 PSG, 2020 U.S. Dist. LEXIS 79037 (C.D. Cal. Apr. 1,
22    2020) ................................................13

23

*Cotter v. Lyft, Inc.*,
   176 F. Supp. 3d 930 (N.D. Cal. 2016) ................................................19

24

25

*Cunningham v. Cty. of Los Angeles*,
   879 F.2d 481 (9th Cir. 1988) ................................................11

26

27

*Donnenfeld v. Petro, Inc.*,
   No. 17 Civ. 2310 (E.D.N.Y. Mar. 5, 2020) ................................................9

28

-vi-

*Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*),
    213 F.3d 454 (9th Cir. 2000) ................................................................21

*Ellis v. Costco Wholesale Corp.*,
    285 F.R.D. 492 (N.D. Cal. 2012) ...........................................................17

*Fernandez v. Victoria Secret Stores, LLC*,
    No. 06 Civ. 04149, 2008 U.S. Dist. LEXIS 123546 (C.D. Cal. Jul. 21, 2008) .....................22

*Fulford v. Logitech, Inc.*,
    No. 08 Civ. 2041, 2010 U.S. Dist. LEXIS 144437 (N.D. Cal. Mar. 5, 2010) ..................11, 12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................14, 16, 18, 19

*In re Heritage Bond Litig.*,
    No. 02 ML 1475, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. Jun. 10, 2005) ......................20

*Johnson v. Triple Leaf Tea Inc.*,
    No. 14 Civ. 1570, 2015 U.S. Dist. LEXIS 170800 (N.D. Cal. Nov. 16, 2015) ................12, 16

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ................................................................21

*Marks v. Everlaw*,
    No. RG20064474 (Cal. Super. Ct., Alameda Cnty.)...........................................13

*Mason v. Lumber Liquidators, Inc.*,
    No. 17 Civ. 04780 (E.D.N.Y.) ................................................................13

*In re MyFord Touch Consumer Litig.*,
    No. 13 Civ. 3072 (N.D. Cal. Nov. 7, 2019).....................................................9

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .........................................................14, 21

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................21

*Perez v. Wells Fargo*,
    No. 17 Civ. 454 (N.D. Cal. 2017)..............................................................9

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)..............................................................18, 21

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ..............................................................1, 22

-vii-

*Romero v. Perryman (In re Easysaver Rewards Litig.)*,
    906 F.3d 747 (9th Cir. 2018) ...................................................................................14

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) .................................................................................13

*Stevens v. Harper*,
    213 F.R.D. 358 (E.D. Cal. 2002) .............................................................................15

*Stovall-Gusman v. W.W. Granger, Inc.*,
    No. 13 Civ. 2540, U.S. Dist. LEXIS 78671 (N.D. Cal. Jun. 17, 2015) ...................20

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................................18

*Tierno v. Rite Aid Corp.*,
    No. 05 Civ. 02520, 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006).........17

*Tijero v. Aaron Bros., Inc.*,
    301 F.R.D. 314 (N.D. Cal. 2013).............................................................................22

*In re Toys-R-Us Delaware, Inc. FACTA Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ............................................................................11

*Tupitza v. Texas Roadhouse*,
    No. 20 Civ. 00002 (W.D. Pa.)..................................................................................13

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)..................................................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................................................15

*Walsh v. CorePower Yoga LLC*,
    No. 16 Civ. 05610, 2017 U.S. Dist. LEXIS 20974 (N.D. Cal. Feb. 14, 2017)............16, 17, 18

*Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*,
    No. 05 Civ. 2320, 2006 U.S. Dist. LEXIS 69193 (N.D. Cal. Sept. 14, 2006).........17

*Wren v. RGIS Inventory Specialists*,
    No. 06 Civ. 05778, 2011 U.S. Dist. LEXIS 38667  (N.D. Cal. Apr. 1, 2011)..........22

**STATUTES**

Cal. Civil Code § 52(a) ....................................................................................................6, 20

California Unruh Civil Rights Act, Cal. Civil Code §§ 51, *et seq.*...................................3

Civil Rights Act of 1866, 42 U.S.C. § 1981 ......................................................................3

-viii-

Class Action Fairness Act, 28 U.S.C. § 1715, *et seq.* .....................................................15

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* .....................................................3

**RULES**

Fed. R. Civ. P. 23(a) .....................................................14, 15, 16, 24

Fed. R. Civ. P. 23(b) .....................................................14, 17, 24

Fed. R. Civ. P. 23(c) .....................................................22

Fed. R. Civ. P. 23(e) .....................................................14, 22

Fed. R. Civ. P. 23(g) .....................................................18

**OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 13.15 (5th ed.)...................18

*Class action lawsuit moves forward against SoFi for denying services to migrants*, Peninsula 360 Press, Apr. 14, 2021
https://peninsula360press.com/en_us/avanza-demanda-colectiva-contra-sofi-for-denying-migrant-services/ .....................................................10

*Illustrative Forms of Class Action Notices: Overview*, Fed. Judicial Ctr., https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction .....................................................22

*Judge Refuses To Dismiss Lawsuit Accusing SoFi Of Denying Loans To Immigrants*, CBS Local, Apr. 14, 2021, https://sanfrancisco.cbslocal.com/2021/04/14/judge-refuses-to-dismiss-lawsuit-accusing-sofi-of-denying-loans-to-immigrants/; .....................................................10

Manual for Complex Litigation §§ 21.632-634 (4th ed. 2004) .....................................................14

Nicholas Iovino, *Lending Startup Can't Dodge Suit Over Denying Loans to Immigrants*, Courthouse News Service, Apr. 12, 2021, https://www.courthousenews.com/lending-startup-cant-dodge-suit-over-denying-loans-to-immigrants/ .....................................................10

*Procedural Guidance for Class Action Settlements*, Dec. 5, 2018, U.S. Dist. Ct. for Northern District Cal., https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ .....................................................1, 2

-ix-

I.    **INTRODUCTION**

Plaintiffs Juarez, Galicia and Jimenez immigrated to the United States as children, and were granted temporary protection from deportation, work authorization and Social Security numbers ("SSNs") under the June 2012 program known as Deferred Action for Childhood Arrivals ("DACA").  Plaintiff Segarceanu immigrated to the United States on a student visa and was granted a temporary green card as a conditional permanent resident ("CPR") following his marriage to his wife, a U.S. citizen, in 2018.  After obtaining DACA or CPR status, work authorization, and SSNs, Plaintiffs applied (or attempted to apply) to SoFi for a variety of student, personal and home loans or loan refinancing products.  Plaintiffs allege that SoFi denied their applications for credit because they were not U.S. citizens or lawful permanent residents ("LPRs").

In May 2020, Plaintiffs brought a class action lawsuit against SoFi, alleging lending discrimination based on alienage and immigration status.  The parties have now entered into a proposed settlement of this litigation for significant monetary and programmatic relief.  Critically, in connection with the settlement, SoFi has agreed to change its lending policies to make credit and loans available to DACA and CPR recipients on the same terms and conditions as it offers credit to U.S. citizens, fully eliminating the harm challenged by the lawsuit for future applicants, including Plaintiffs and class members who wish to reapply for SoFi loans.

The settlement also provides for monetary relief in the form of a settlement fund in the amount of $155,000 and an additional $25,000 in administration costs, and up to $300,000 in attorneys' fees and costs.  Miazad Decl. Ex. A ("Settlement Agreement" or "SA") §§ 3.3.2, 15.2.[1]

For the reasons set forth below, the proposed settlement and this Motion readily satisfy the requirements of Rule 23, Ninth Circuit precedent, *see, e.g.*, *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1060 (9th Cir. 2019), and established Northern District practice, including the

---

[1]    All exhibits are attached to the accompanying Declaration of Ossai Miazad in Support of Motion for Preliminary Settlement Approval ("Miazad Decl.").

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY SETTLEMENT
APPROVAL

Class Action Settlement Guidance. *Procedural Guidance for Class Action Settlements*, U.S. Dist. Ct. for Northern District Cal., https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (last updated Dec. 5, 2018). The parties have zealously litigated the complex arbitration and liability issues presented by this case, briefing numerous motions to compel, dismiss and strike, engaging in formal and informal fact discovery, and participating in an all-day mediation session with experienced JAMS arbitrator David Geronemus, Esq., as well as multiple phone conferences since mediation. Plaintiffs accordingly and respectfully submit that the Court should preliminary approve this valuable settlement, and approve the issuance of notice to Class Members to let them make claims, object, or opt out, as appropriate.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    SoFi's Lending Policies Made DACA Recipients and CPRs Ineligible, or Subject to Heightened Requirements, for Credit.

As a major online lender, SoFi originates student loans, personal loans, and home mortgage and improvement loans, refinances student loans, and offers credit card consolidation (collectively, "Loans"). Dkt. No. 62, Second Am. Compl. ("SAC") ¶ 2. SoFi's lending policies and practices have required applicants who are not U.S. citizens to be either LPRs or holders of certain U.S. visas to be eligible for Loans. *Id.* ¶ 3. Since 2012, and continuing through early-December 2019, SoFi's lending policies made non-citizen applicants who resided in the United States and held DACA status ineligible for Loans. *Id.* ¶ 4. In early-December 2019, after discussions with undersigned counsel on behalf of Plaintiff Juarez, SoFi changed its policy to make DACA recipients eligible for Loans, but only if they apply by telephone with a co-signer who is a U.S. citizen or LPR—two requirements that are not imposed on citizen applicants. *Id.* ¶ 5. At the same time, SoFi created a designated customer service number to field calls and initiate applications from DACA recipients and other non-citizens seeking Loans. Miazad Decl. ¶ 11. Throughout the relevant time period, SoFi had a policy and practice of asking conditional permanent residents ("Conditional Permanent Residents" or "CPRs") for information as to renewal of their status, which in certain circumstances they were unable to provide, and that rendered them ineligible for loans. SAC ¶ 6.

Plaintiffs Juarez, Galicia, and Jimenez are DACA recipients living in the United States with valid SSNs who were denied the opportunity to be considered for credit from SoFi, pursuant to the lending policies described above, because they were not U.S. citizens or LPRs, or did not have an eligible U.S. co-signer.  *Id.* ¶¶ 65-86, 116-51.  Plaintiff Segarceanu is a CPR who, likewise, was denied the opportunity to be considered for credit from SoFi because he was not a U.S. citizen or LPR.  *Id.* ¶¶ 87-115.

## B.    Procedural History

On May 19, 2020, Plaintiff Juarez initiated this action by filing a putative class action Complaint against SoFi, asserting violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and the California Unruh Civil Rights Act, Cal. Civil Code §§ 51, *et seq.* ("Unruh Act").  Dkt. No. 1.  After SoFi moved to dismiss, Plaintiffs Juarez and Segarceanu filed a First Amended Complaint on July 30, 2020, adding named Plaintiff Segarceanu and claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").  Dkt. No. 33.

On August 31, 2020, Defendants filed a Motion to Compel Arbitration, or in the Alternative Dismiss, or in the Alternative Strike Portions of the Plaintiff's First Amended Complaint.  Dkt. No. 38 (First Motion to Compel, Dismiss and Strike).  With respect to the Motion to Compel, SoFi argued that Plaintiff Juarez's claims were subject to the arbitration provision that SoFi requires applicants to sign as a condition of any online application.  *See id.* In his Opposition, Plaintiff Juarez argued that while SoFi's arbitration agreement may have applied to Juarez's initial online application, it did not extend to his subsequent attempts to apply for credit by calling SoFi's customer service number.  Dkt. No. 41 (Plaintiffs' Opp. to First Motion to Compel, Dismiss and Strike) at 8-9.

Following oral argument, on April 12, 2021, the Court issued an order (1) denying SoFi's Motion to Compel, granting in part and denying in part SoFi's Motion to Dismiss, and denying SoFi's Motion to Strike and (2) providing Plaintiffs an opportunity to amend to address the deficiencies identified as to Plaintiffs' Unruh Act claim.  Dkt. No. 56 (Order Denying First Motion to Compel).  With respect to SoFi's Motion to Compel, the Court found that, while

otherwise valid, SoFi's online arbitration agreement applies on a "transaction-by-transaction basis" and does not extend to independent applications for Loans made through SoFi's customer service phone line. *Id.* at 7-9.

On May 3, 2021, Plaintiffs filed a Second Amended Complaint, adding named Plaintiffs Jimenez and Galicia and incorporating additional allegations in support of Plaintiffs' Unruh Act claims. Dkt. No. 62. On June 2, 2021, SoFi filed a Motion to Compel Arbitration of Claims of Plaintiff Emiliano Galicia, Dkt. No. 68 ("Second Motion to Compel"), which Plaintiff Galicia opposed, Dkt. No. 72, and which the Court later granted in part and denied in part on August 24, 2021, Dkt. No. 77. Consistent with its Order Denying the First Motion to Compel, the Court found that while Plaintiff Galicia's initial online application was covered by the online arbitration agreement, his subsequent attempts to apply over the phone were not. Dkt. No. 77 (Order Denying in Part Second Motion to Compel) at 5-7.

On July 15, 2021, the Parties participated in a private mediation session with experienced JAMS arbitrator David Geronemus, during which they were initially unable to reach a settlement. Following the July mediation, the parties continued to engage with the mediator, and with each other, to explore avenues for a potential resolution, while simultaneously moving forward with litigation. Miazad Decl. ¶ 18. In November 2021, the parties reached a tentative agreement on the materials terms of a settlement, after which they stipulated to a stay of litigation pending further negotiations. Dkt. No. 83, 85, 87, 89 (Stipulations). Since that time, the Parties have been diligently negotiating the terms of the settlement agreement and accompanying notice documents. *Id.*

III.    THE PROPOSED SETTLEMENT

A.    The Settlement Classes

For settlement purposes only and consistent with the parties' Settlement Agreement, Plaintiffs seek certification of a National Class and a California Class. The two classes are defined as follows:

"**National Class**" means those individuals who:

- (i) applied for or attempted to apply for any credit product from SoFi; (ii) between December 19, 2019 through the date of preliminary approval; (iii) who held valid and unexpired DACA or CPR status at the time they applied for or attempted to apply for credit; (iv) who called SoFi at the designated 877 number regarding the application as set forth in the class data produced by SoFi; (v) who were denied as set forth in the class data produced by SoFi; and (vi) who were not California residents as indicated in the "applied state" data field as set forth in the class data produced by SoFi; or
- (i) applied for or attempted to apply for any credit product from SoFi; (ii) between May 19, 2017  through the date of preliminary approval; (iii) who held valid and unexpired DACA or CPR status at the time they applied for or attempted to apply for credit; (iv) who opted out of SoFi's arbitration provision in writing; (v) who were denied as set forth in the class data produced by SoFi; and (vii) who were not California residents as set forth in the class data produced by SoFi.  SA § 1.9.1.

 "**California Class**" means those individuals who:

- (i) applied for or attempted to apply for a credit product from SoFi; (ii) between December 19, 2019 through the date of preliminary approval; (iii) who held valid and unexpired DACA or CPR status at the time they applied for or attempted to apply for credit; (iv) who called SoFi at the designated 877 number regarding the application as set forth in the class data produced by SoFi; (v) who were denied as set forth in the class data produced by SoFi; and (vi) who were California residents as indicated in the "applied state" data field as set forth in the class data produced by SoFi; or
- (i) applied for or attempted to apply for a credit product from SoFi; (ii) between May 19, 2017 through the date of preliminary approval; (iii) who held valid and unexpired DACA or CPR status at the time they applied for or attempted to apply for credit; (iv) who opted out of SoFi's arbitration provision in writing; (v) who were denied as set forth in the class data produced by SoFi; and (vii) who were California residents as set forth in the class data produced by SoFi.  SA § 1.9.2.

These class definitions are intended to capture DACA or CPR applicants who were denied SoFi loans during the class period, and whose applications were not subject to SoFi's online arbitration agreement.  The definitions thus comport with the Court's finding that SoFi's arbitration provision is valid, but applies to applications submitted online in connection with an applicant's online registration process.  *See* Dkt. 56 (Order Denying First Motion to Compel) at 7-9.  Because individuals who attempted to apply by calling SoFi's designated customer service line[2] engaged in a separate "transaction" not covered by the arbitration provision, they are properly included as members of the class.  *Id.*

---

[2]      SoFi opened a designated (1-877) customer service line for DACA recipients and other non-citizen applicants on December 19, 2019.  Miazad Decl. ¶ 11.  Applicants who called this

-5-

The Parties estimate that there are approximately 2,300 total Class Members, including approximately 300 California Class Members and approximately 2,000 National Class Members. Miazad Decl. ¶ 34.

### B.    Comparison of Settlement Classes with Those Proposed in the Complaint

In the Second Amended Complaint, Plaintiffs proposed certification of three classes, organized by the three types of claims asserted (Section 1981, Unruh and FCRA).  Specifically, Plaintiffs proposed:

1. A "Section 1981 Class" defined as "all non-United States citizens who resided in the United States and had DACA or were Conditional Permanent Residents at the time they applied and were denied or unsuccessfully sought to apply for any SoFi Loan from May 19, 2017 through the date of final judgment in this action."  Dkt. 62 (SAC) ¶ 162.

2. An "Unruh Act Class" defined as "all non-United States citizens who resided in the United States and had DACA or were Conditional Permanent Residents at the time they applied and were denied or unsuccessfully sought to apply for any SoFi Loan from May 19, 2018 through the date of final judgment in this action."  *Id.* ¶ 163.

3. A "FCRA Class" defined as all non-United States citizens who resided in the United States and were Conditional Permanent Residents at the time they applied and were denied or unsuccessfully sought to apply for any SoFi Loan, and whose consumer reports were obtained by SoFi from July 30, 2018 through the date of final judgment in this action.  *Id.* ¶ 164.

In contrast, the proposed settlement collapses these three claims-based classes together, using the earliest statute of limitations period (under Section 1981) as the beginning of the liability period, and then divides class members based on whether they live in California (the California Class) or any other state (the National Class). SA § 1.9.  Substantively, the classes are the same; they cover DACA recipients and CPRs who were denied the same types of SoFi loan products during the same time period.  Under the Settlement Agreement, members of the California Class are entitled to a recovery of up to $3,000 per claim, and members of the National Class are entitled to up to $1,000 per claim.  *Id.* § 3.3.5.  This distinction is fair and

phone number, as reflected in SoFi's records, are included as class members.  *Id.* ¶ 12.  Prior to this date, SoFi's records do not identify individuals who sought Loans over the phone, and therefore individuals who applied for Loans over the phone prior to December 19, 2019 are not included in the class and will not release claims as part of this settlement.  *Id.*

-6-

1  reasonable given that California Class Members would potentially be entitled to valuable

2  statutory damages (of up to $4,000 per claim) under California's Unruh Act, which are not

3  available to member of the National Class.  Miazad Decl. ¶ 32; Cal. Civil Code § 52(a)

4  (providing statutory damages of $4,000 per violation).

5      As discussed, *supra*, the settlement classes are also narrower than those proposed in

6  Plaintiff's Second Amended Complaint in that they are designed to exclude applicants subject to

7  SoFi's arbitration agreement.  This limitation is reasonable as it comports with the Court's

8  finding that SoFi's online arbitration agreement is valid and binding, but does not extend to

9  individuals who sought to apply through separate "transactions" using SoFi's customer service

10  line.  *See* Dkt. 56 (Order Denying First Motion to Compel) at 7-9.

11      **C.    Settlement Overview**

12      The Settlement Agreement provides two important forms of relief for the Class Members:

13  (1) programmatic relief whereby SoFi will change its lending policies such that DACA and CPR

14  applicants will be evaluated for consumer credit product eligibility on the same terms as U.S.

15  citizen applicants and (2) a Settlement Fund of $155,000 to compensate Class Members who

16  choose to file claim forms.

17      **1.    Programmatic Relief**

18      Arguably the most significant aspect of the settlement is that, subject to its lending

19  requirements, SoFi agrees to modify its lending criteria to make DACA recipients and CPRs

20  eligible for Loans on the same terms as U.S. citizens and LPRs (the "Programmatic Relief").

21  SA § 3.2.  By removing additional lending requirements and eligibility bars, this policy shift

22  eliminates the precise discriminatory harm that Plaintiffs sought to challenge by this suit, and

23  restores Plaintiffs and Class Members to equal footing with U.S. citizen and LPR applicants.  As

24  a major lender, particularly with respect to student loans and loan refinancing, Plaintiffs hope

25  and expect that SoFi's decision to open its suite of consumer lending products to DACA

26  recipients and CPRs will have a positive impact on the consumer lending industry at large.

27      **2.    Monetary Relief**

28

-7-

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY SETTLEMENT
APPROVAL

1    In addition to Programmatic Relief, SoFi has agreed to create a $155,000 Settlement

2    Fund that will cover: (a) payments of up to $3,000 per Verified Claim for each California Class

3    Member, and up to $1,000 per Verified Claim for each National Class Member; (b) Incentive

4    Awards of up to $5,000 each for Plaintiffs Segarceanu, Galicia and Jimenez; and (c) an

5    Individual Payment of up to $6,000 for Plaintiff Juarez.[3]  SA §§ 3.3.5, 15.2.  In addition to the

6    $155,000 Settlement Fund, SoFi has further agreed to pay up to $300,000 in Class Counsel's

7    attorneys' fees and expenses, and up to $25,000 in settlement administration costs.  SA §§ 3.3,

8    15.1.

9    The plan of allocation fairly and adequately compensates Class Members.  California

10   Class Members are eligible to receive up to $3,000 per claim in light of their potential

11   entitlement to statutory damages under the Unruh Act (of up to $4,000 per violation).  *Id* § 3.3.5.

12   National Class Members are eligible to receive up to $1,000 per claim reflecting their potential

13   entitlement to compensatory or nominal damages available under Section 1981.  *Id.*  In the event

14   the total amount of Verified Claims exceeds the available Settlement Fund, then the payments

15   will convert to a pro rata share, with each California Class Member receiving three times the pro

16   rata share of each National Class Member for each Verified Claim.  *Id.*

17   Within 30 days of preliminary approval, the Settlement Administrator will distribute

18   Notice to all Class Members by U.S. mail, email and text.  SA §§ 2.5, 7.3; SA Ex. 1 (Notice), Ex.

19   7 (Email) and Ex. 3 (Text).  Consistent with modern best practices, the Settlement Administrator

20   will maintain a dual-language (English-Spanish) website providing the Notice, Claim Form,

21   information about deadlines and other relevant dates, key pleadings and orders and Class

22   Counsel's contact information.  *Id.* § 6.2.  The Settlement Administrator will also create a dual-

23   language (English-Spanish) toll-free phone number to field questions from Class Members.  *Id.*

24

25   [3]    As discussed further in Section III(C)(3), the Settlement Agreement provides for an
individual payment in the amount of $6,000 to Plaintiff Juarez, which is the same amount as the

26   National Class Representative, because he will not benefit from the class settlement as his claim
falls outside of the class definition due to the fact that he attempted to apply for loans over the

27   phone before SoFi created a designated customer service line for DACA recipient and other non-
permanent residents in December 2019.  Miazad Decl. ¶¶ 11-12.

28

-8-

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY SETTLEMENT
APPROVAL

1   Reminder notices will be sent via email and text 30 days after the mailing of Notice to remind

2   Class Members of their opportunity to complete their Claim Forms.  *Id.* § 7.6.  Class Members

3   will have at least 60 days to submit a claim form, and at least 45 days to file an objection with

4   the Court or opt out by sending a written request to the Settlement Administrator.  SA §§ 1.6,

5   1.30, 1.32, 11.1, 12.2.

6       To make a claim, Class Members will be required to complete, sign and submit a claim

7   verification form ("Claim Form") to the Settlement Administrator.  *Id.* § 5.4.  The Claim Form

8   will require each claimant to affirm that they: (1) had valid and unexpired DACA or CPR status

9   at the time they applied for a credit product with SoFi; (2) were denied at least one of those

10  products during the class period; and (3) have and are prepared to provide Official

11  Documentation[4] to verify their DACA or CPR status.  *Id.* § 5.2.  Claim Forms may be submitted

12  online or by email or mail.  *Id.*, Ex. 2 (Claim Form).

13      In exchange for the monetary consideration described above, each Class Member will

14  release SoFi of any and all claims relating to SoFi's denial of their loan applications based on

15  alienage, lack of citizenship and/or immigration status, including, but not limited to, any claims

16  under Section 1981, the Unruh Act, other state civil rights statutes, the Equal Credit Opportunity

17  Act, and the FCRA (the "Released Claims").[5]  SA § 1.37.  As a condition to receiving an

18  Individual Payment or Incentive Award, the Plaintiffs will also execute a general release of all

19  claims.

20      Based on the Parties' experience in similar cases, Plaintiffs estimate a claims rate of

21  approximately 10%.  *See, e.g.*, *Perez v. Wells Fargo*, No. 17 Civ. 454 (N.D. Cal. 2017), Dkt. No.

---

22

23  [4]   Official Documentation may include, for example, a: (1) a copy of an I-797 Approval
    Notice from an I-821D; (2) a copy of a Work Authorization Card containing the code "C-33"; or

24  (3) a green card with conditions, or other documentation agreed to in good faith by the Parties.
    *Id.* § 1.31.

25  [5]   Although this release is broader than the claims pled in the complaint, it is limited to the

26  subject matter of the operative complaint, and Class Counsel are unaware of any additional
    claims it would extinguish.  Beyond the Unruh Act, no other state law civil rights statutes

27  provide comparable statutory penalties for claims related to the denial of Class Members' loan
    applications based on alienage, lack of citizenship and/or immigration status.

28

-9-

355 (8,555/368,760 or approximately 2% of potential class members filed claims); *Donnenfeld v. Petro, Inc.*, No. 17 Civ. 2310 (E.D.N.Y. Mar. 5, 2020), ECF No. 80-1 (8,074/91,807 or 8.6% of class members filed claims); *In re MyFord Touch Consumer Litig.*, No. 13 Civ. 3072 (N.D. Cal. Nov. 7, 2019), ECF No. 542 (claims submitted on behalf of 4.5% of class); *see also* Miazad Decl. ¶ 36. Plaintiffs estimate that the return rate for California Class Members will be on the higher end of that range, considering the high amount of the settlement award per denial, and that the return rate for National Class Members will fall on the lower end of the range. *Id*. Any remainder from the Settlement Fund that is not claimed by Class Members will be given as a *cy pres* donation to the University of California Immigrant Legal Services Center, SA § 3.3.6, an organization that provides free legal services to immigrant students and their families, *id.*; Miazad Decl. ¶¶ 61-64.

### 3.    Class Representative and Individual Plaintiff Incentive Awards

The settlement provides that, subject to Court approval, and conditioned on each Plaintiff granting SoFi a general release, SoFi will pay Plaintiffs Segarceanu, Galicia and Jimenez Incentive Awards of $5,000 each. SA § 15.2. These amounts will be separate and apart from the recovery to which Plaintiffs Segarceanu, Galicia and Jimenez will be entitled under the settlement as Class Members. *Id*. The settlement further provides that Sofi will pay Plaintiff Juarez an Individual Payment in the amount of $6,000 (the equivalent of a $5,000 incentive award plus $1,000 recovery established for the National Class).

Individual Payment and Incentive Awards of $5,000 are reasonable as they are intended to compensate Plaintiffs for (a) the significant time and effort over the past two years they have spent on behalf of the Class assisting Class Counsel with the prosecution of these claims, (b) the resulting significant value they have conferred to Class Members, and (c) the significant exposure and risk they incurred by exposing themselves as DACA recipients and CPRs and taking a leadership role in a class action lawsuit that has garnered media coverage.[6] Plaintiff

---

[6]    *See, e.g.*, Nicholas Iovino, *Lending Startup Can't Dodge Suit Over Denying Loans to Immigrants*, Courthouse News Service, Apr. 12, 2021, https://www.courthousenews.com/lending-startup-cant-dodge-suit-over-denying-loans-to-

-10-

1   Juarez is further entitled to an additional $1,000 payment because he will not receive any

2   monetary relief from the Settlement Fund.  Miazad Decl. ¶ 55.  Unlike the other three Plaintiffs,

3   Mr. Juarez sought to apply via telephone before SoFi created a designated "877" customer

4   service line for DACA and other non-citizen applicants in December 2019.  *Id.*  As a result, his

5   calls are not reflected in SoFi's call-log data, and therefore he is not included in either class

6   definition.  *Id.*  Based on the Court's finding that Mr. Juarez's separate attempts to apply for a

7   SoFi loan via telephone, as alleged, would not have been covered by SoFi's arbitration

8   agreement, Mr. Juarez should be entitled to the $1,000 payment that he otherwise would have

9   been eligible to receive as a member of the National Class had SoFi kept records of customer

10  service calls from DACA recipients prior to December 2019.  *Id.*

11      The requested Individual Payment and Incentive Awards fall well within the range of

12  reasonableness for service awards in this Circuit, and do not undermine the adequacy of the

13  Plaintiffs as Class Representatives.  As this Court has noted, many judges in the Ninth Circuit

14  "have held that a $5,000 incentive award is 'presumptively reasonable.'"  *Bower v. Cycle Gear,*

15  *Inc.*, No. 14-cv-02712-HSG, 2016 U.S. Dist. LEXIS 112455, at *20 (N.D. Cal. Aug. 23, 2016)

16  (citing *In re Toys-R-Us Delaware, Inc. FACTA Litig.*, 295 F.R.D. 438, 470-72 (C.D. Cal. 2014)).

17              **4.    Attorneys' Fees and Costs**

18      As provided for in the Settlement Agreement, Class Counsel will request Court approval

19  for an award of up to $300,000 for attorneys' fees and expenses.  SA § 15.1.  This award will not

20  be deducted from the Settlement Fund, but rather will be paid separately by SoFi.  *Id.*

21      In non-common fund cases brought under fee shifting statutes such as Section 1981 and

22  the Unruh Act, the lodestar method for awarding attorneys' fees is appropriate.  *In re Bluetooth*

23  *Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011).  The lodestar figure is

24  _____

25  immigrants/; *Judge Refuses To Dismiss Lawsuit Accusing SoFi Of Denying Loans To Immigrants*, CBS Local, Apr. 14, 2021, https://sanfrancisco.cbslocal.com/2021/04/14/judge-

26  refuses-to-dismiss-lawsuit-accusing-sofi-of-denying-loans-to-immigrants/; *Class action lawsuit moves forward against SoFi for denying services to migrants*, Peninsula 360 Press, Apr. 14,

27  2021, https://peninsula360press.com/en_us/avanza-demanda-colectiva-contra-sofi-for-denying-migrant-services/.

28

-11-

1   "presumptively reasonable." *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir.

2   1988).  Additionally, the fact that the award of attorneys' fees and costs was negotiated

3   separately and will not be paid out of the relief available to the class supports a finding that the

4   requested fee award is reasonable.  *Fulford v. Logitech, Inc.*, No. 08 Civ. 204, 2010 U.S. Dist.

5   LEXIS 144437, at *5 (N.D. Cal. Mar. 5, 2010).

6           Class Counsel's lodestar in this zealously litigated action is already over $638,000,

7   reflecting approximately 1,125 attorney hours, in addition to litigation costs of approximately

8   $18,000.  Miazad Decl. ¶ 56; Hall Decl. ¶ 10.  These fees and costs do not account for future

9   work to be performed to (1) secure preliminary approval, (2) oversee implementation of notice

10  and respond to Class Member inquiries during the notice period, (3) assist the Settlement

11  Administrator in evaluation of the Claim Forms, and (4) brief and argue final approval.  Miazad

12  Decl. ¶ 60.  Thus, Plaintiffs' requested $300,000 award reflects less than half of their fees

13  accrued to date, resulting in a "negative" lodestar multiplier of 0.47x, which will further decrease

14  during the coming months while Class Counsel continues to work for the Class Members'

15  benefit. *Id.* ¶¶ 56-60.  *See Johnson v. Triple Leaf Tea Inc.*, No. 14 Civ. 1570, 2015 U.S. Dist.

16  LEXIS 170800, at *24 (N.D. Cal. Nov. 16, 2015) (accounting for "future attorney time" in

17  decision whether attorneys' fees were reasonable).  Class Counsel have performed substantial

18  work to earn the requested award over the past two years of litigation including by: defeating, in

19  substantial part, two motions to compel and one motion to dismiss and motion to strike;

20  amending the complaint twice to include additional Plaintiffs and claims; undertaking significant

21  discovery, and engaging in various disputes with SoFi regarding the same; preparing for and

22  attending a mediation session; and thereafter engaging in months of negotiations before reaching

23  this settlement.  Miazad Decl. ¶ 59.  Because the requested award reflects a negative lodestar for

24  Class Counsel's diligent and effective representation, with no additional payment for costs and

25  no adjustment for future hours, and because it will not be paid out of the Settlement Fund, it is

26  presumptively reasonable.

27           **5.       Settlement Administration**

28

-12-

The Settlement Agreement provides that SoFi will pay the cost of a Settlement Administrator, up to $25,000. The parties have selected Rust Consulting ("Rust") as Settlement Administrator. The parties selected Rust by gathering bids from three settlement administrators from a list of four potential settlement administrators. Miazad Decl. ¶ 46. Because the method of notice and claims payment processes are delineated in the Settlement Agreement, no new methods were proposed by the proposed settlement administrators, and instead the parties evaluated whether the proposed settlement administrators were equipped to handle the notice and claims process as negotiated by the parties. *Id.* ¶ 47. Class Counsel has retained Rust to administer the claims process in 10 cases over the past three years, including cases with complex claims processes like this one. *See, e.g.*, *Tupitza v. Texas Roadhouse*, No. 1:20-cv-00002 (W.D. Pa.); *Marks v. Everlaw*, No. RG20064474 (Cal. Super. Ct., Alameda Cnty.); *Mason v. Lumber Liquidators, Inc.*, No. 1:17-cv-04780 (E.D.N.Y.); Miazad Decl. ¶ 48.

Rust has agreed to perform all administration work set forth in the Settlement Agreement for a will-not-exceed cost of $25,000, which Rust anticipates being sufficient to cover the total costs of settlement administration. SA § 3.3.1; Miazad Decl. ¶ 49. This includes costs of administering notice as required under the Class Action Fairness Act, 28 U.S.C. §1715. SA § 2.3; Miazad Decl. ¶ 49. The Settlement Administrator's maximum fee amounts to approximately 16% of the $155,000 maximum Settlement Fund, which is reasonable in light of the amount and complexity of the work to be performed (especially processing and verifying the Claim Forms, which will require careful manual review and potential requests for supplemental Official Documentation), and the need for English-Spanish translation services. SA § 6.2; Miazad Decl. ¶ 50. This maximum fee is also in line with settlement administration fees in comparable cases. *See, e.g.*, *Contreras v. Worldwide Flight Servs.,* No. 18-cv-6036 PSG (SSx), 2020 U.S. Dist. LEXIS 79037, at *5, *28 (C.D. Cal. Apr. 1, 2020) (approving $25,000 settlement administration fees where notice issued to class of 1,724 class members); *Bond v. Ferguson Enters.*, No. 09-cv-1662 (OWW) (MJS), 2011 U.S. Dist. LEXIS 70390, at *21 (E.D. Cal. June 30, 2011) ($18,000 settlement administration fee awarded in case involving approximately 550 class members).

-13-

6.    **Cy Pres**

Plaintiffs have negotiated a settlement that requires SoFi to pay at least $155,000.  In the event that the combined Individual Payment, Incentive Awards and payments to claiming Class Members are less than this floor, any remaining funds shall be given as a *cy pres* donation to the University of California Immigrant Legal Services Center in accord with best practices.  SA § 3.3.6; *see also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (holding that *cy pres* distribution is appropriate "for the limited purpose of distributing the unclaimed funds"); *Romero v. Perryman (In re Easysaver Rewards Litig.)*, 906 F.3d 747, 761 (9th Cir. 2018) (same).

Operating out of the UC Davis School of Law, the University of California Immigrant Legal Services Center provides direct legal services to immigrant students and their families, including DACA recipients and CPRs, to address a variety of legal needs.  Miazad Decl. ¶¶ 61-63.  This organization's mission aligns with Class Members' interests in seeking equitable access to consumer loan products for DACA recipients and other immigrant applicants, including with respect to student loans and loan refinancing.  *Id.*; *see also In re Easysaver*, 906 F.3d at 761-62 (*cy pres* recipients should be selected in light of the objectives of the underlying statute and the interests of the class).  Neither the Parties nor their counsel have any relationship with the University of California Immigrant Legal Services Center.  Miazad Decl. ¶ 64.

## IV.    ARGUMENT

Settlement approval "involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *see also* Manual for Complex Litigation §§ 21.632-634 (4th ed. 2004).  Preliminary approval requires two elements: First, the court must determine that the settlement class meets the requirements for class certification if it has not yet been certified, Fed. R. Civ. P. 23(a), (b), and second, the court must determine that the settlement

-14-

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY SETTLEMENT
APPROVAL

1    is fair, reasonable, and adequate, Fed. R. Civ. P. 23(e)(2).  *Hanlon v. Chrysler Corp.*, 150 F.3d

2    1011, 1025-26 (9th Cir. 1998).

### A.    Certification of the Rule 23 Classes Is Proper.

For settlement purposes, the parties agree to certification of the California Class and the National Class.  "The validity of use of a temporary settlement class is not usually questioned." Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 11:22 (4th ed. 2002).  The relevant factors also weigh in favor of certification.

### 1.    Rule 23(a) Is Satisfied.

First, numerosity is met because joinder of Class Members would be impractical. Fed. R. Civ. P. 23(a)(1).  Records from SoFi's customer service line designated for DACA recipients and other non-citizen applicants suggests that there are at least 2,300 non-citizen applicants who applied for consumer loans over the phone during the relevant period.  Miazad Decl. ¶ 34.  While difficult to assess, the Parties estimate that at least 30% of these individuals (or at least 690 applicants) held DACA or CPR status, and would potentially be eligible to participate in the Settlement as Class Members.[7]  *Id.* ¶ 35.  Further, potential Class Members are "geographically dispersed" nationwide, including within California, which supports a finding of numerosity.  *Id.* ¶ 34.  *See Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, No. 15 Civ. 224, 2016 U.S. Dist. LEXIS 10277, at *16 (N.D. Cal. Jan. 25, 2016) (noting that "joinder may be impracticable where a class is geographically dispersed").

Second, commonality is met because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The Supreme Court has stated that the focus is on whether there are common issues of fact among class members and whether class treatment will "generate common *answers* apt to drive the resolution of the litigation."  *Abdullah v. U.S. Sec'y Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

---

[7]        Apart from DACA recipients and CPRs, applicants on SoFi's call records may have held other non-covered immigrations statuses, such as various types of visas, or undocumented individuals.

1   (2011)).  Here, common questions include whether SoFi's lending policies deny Plaintiffs

2   and Class Members the opportunity to be considered for credit because of their alienage or

3   immigration status and whether SoFi's lending policies violate Section 1981 or the Unruh Act.

4   Further, Plaintiffs assert liability based on uniform lending policies.[8]

5       <u>Third</u>, typicality is satisfied.  Rule 23 typicality requires a finding that the "claims or

6   defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R.

7   Civ. P. 23(a)(3).  Under the rule's "permissive" standard, "representative claims are 'typical' if

8   they are reasonably co-extensive with those of absent class members; they need not be

9   substantially identical."  *Johnson*, 2015 U.S. Dist. LEXIS 170800, at *7 (quoting *Hanlon*, 150

10  F.3d at 1020).  Here, the Class Representatives are typical of the classes they propose to

11  represent because (1) each lived in California or the United States, (2) each was a DACA

12  recipient or CPR when they applied for a Loan from SoFi; (3) each either applied by calling

13  SoFi's designated customer service line, or opted out of arbitration in writing, and therefore has

14  at least one application not covered by SoFi's online arbitration agreement and (4) each alleged

15  that he was denied credit because he was not a U.S. citizen or LPR pursuant to SoFi's policies.

16      <u>Fourth</u>, Plaintiffs have fairly and adequately protected the interests of the class.  Fed. R.

17  Civ. P. 23(a)(4).  The adequacy requirement is met where the class representatives: (1) have

18  common, and not antagonistic, interests with unnamed class members, and (2) will vigorously

19  prosecute the interests of the class through qualified counsel.  *Hanlon*, 150 F.3d at 1020; *see also*

20  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

21      Here, adequacy is met because Class Representatives have the same interests as other

22  Class Members and have shown that they can fairly and adequately protect Class Members'

23  interests.  Like all Class Members, Class Representatives were denied credit by SoFi based on

24  their immigration status pursuant to SoFi's lending policies.  Miazad Decl. ¶ 51.  Class

25

26  ───────────────
    [8]    *See, e.g.*, *Stevens v. Harper*, 213 F.R.D. 358, 377 (E.D. Cal. 2002) (in civil rights context,
27  "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that
    affects all of the putative class members").

28
                                             -16-

1   Representatives have no conflicts of interest with the Class Members and, Class Members stand

2   to benefit substantially from Class Representatives' pursuit of damages on their behalf. *Id.* ¶ 52.

3   Class Representatives (along with Plaintiff Juarez) have vigorously represented the interests of

4   their fellow Class Members and devoted substantial time to the prosecution of this action,

5   including by responding to extensive discovery, being prepared to sit for deposition, and having

6   numerous phone calls and meetings with counsel. *Id.* ¶¶ 53-54.

7         In addition, Plaintiffs are represented by adequate counsel. Outten & Golden LLP and

8   Lawyers for Civil Rights ("LCR"), have extensive experience litigating complex civil rights and

9   employment class actions and have vigorously prosecuted this action on behalf of Plaintiffs

10  through extensive motion practice and fact discovery.  Miazad Decl. ¶¶ 4-9 (collecting cases);

11  Declaration of Sophia Hall ("Hall Decl.") ¶¶ 6-7 (same); *see also, e.g.*, *Walsh v. CorePower*

12  *Yoga LLC*, No. 16-cv-05610, 2017 U.S. Dist. LEXIS 20974, at *24 (N.D. Cal. Feb 14, 2017)

13  ("[Outten & Golden] ha[s] a proven track record in the prosecution of class actions as they have

14  successfully litigated and tried many major class action cases.").  For these reasons, Class

15  Counsel satisfy the adequacy requirement of Rule 23(a).

16              **2.      Certification Is Proper Under Rule 23(b)(3).**

17        Rule 23(b)(3) requires that common questions predominate over individual ones, and that

18  a class action is superior to other available methods for adjudicating the controversy.  Fed. R.

19  Civ. P. 23(b)(3).  Both requirements are met here.

20        The proposed classes, the California Class and the National Class, are sufficiently

21  cohesive to satisfy predominance. *Amchem*, 521 U.S. at 623.  Predominance does not require

22  "that each element of [a plaintiff's] claim [is] susceptible to classwide proof." *Amgen Inc. v.*

23  *Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (internal quotation marks and citation

24  omitted).  Rather, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling,

25  issues in the case are more prevalent or important than the non-common, aggregation-defeating,

26  individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations

27  omitted).  Here, Plaintiffs challenge lending policies and eligibility criteria that apply to all Class

28

1    Members. Common questions as to their nature and legality can be adjudicated collectively and

2    will drive the resolution of plaintiffs' claims.[9]

3         Superiority rests on factors like individual class members' desire to bring individual

4    actions and the utility of concentrating the litigation in one forum. Fed. R. Civ. P. 23(b)(3).

5    Here, "there is no indication[] that class members seek to individually control their cases, that

6    individual litigation is already pending in other forums, or that this particular forum is

7    undesirable for any reason." *Tierno v. Rite Aid Corp.*, No. 05 Civ. 02520, 2006 U.S. Dist.

8    LEXIS 71794, at *33 (N.D. Cal. Aug. 31, 2006); *see also Amchem*, 521 U.S. at 615. Individual

9    lawsuits from hundreds of plaintiffs, for modest damages, would be wasteful and inefficient for

10   the court system. *See, e.g.*, *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, No. 05 Civ.

11   2320, 2006 U.S. Dist. LEXIS 69193, at *30 (N.D. Cal. Sept. 14, 2006). Because the class

12   mechanism will achieve economies of scale for Class Members, conserve judicial resources, and

13   preserve public confidence in the system by avoiding repetitive proceedings and preventing

14   inconsistent adjudications, superiority is met.

15         **3.    Plaintiffs' Counsel Should Be Appointed as Class Counsel.**

16         Adequacy of class counsel depends on (1) work performed on the matter, (2) experience,

17   (3) knowledge of the law, and (4) resources counsel can commit. Fed. R. Civ. P. 23(g)(1)(A).

18   Class Counsel readily satisfy these criteria, as set forth above. *See supra* Section IV(A)(1); *see*

19   *also* Miazad Decl. ¶¶ 4-9; Hall Decl. ¶¶ 6-7.

20         **B.    The Settlement Is Fair, Reasonable, And Adequate.**

21         Once the Court has found class certification proper, the next step of the preliminary

22   approval process is to assess whether the settlement is "fundamentally fair, adequate, and

23   reasonable." *Hanlon*, 150 F.3d at 1026. Typically, the first-stage analysis looks for "obvious

24   deficiencies," with preliminary approval being granted if the settlement is non-collusive and

25

26   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [9]     *See, e.g.*, *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 509, 538 (N.D. Cal. 2012)

27   (predominance satisfied as to discrimination claims where plaintiffs challenged "specific
     employment practices" that applied "companywide").

28
                                                      -18-

1  within the range of possible final approval.  *Walsh*, 2017 U.S. Dist. LEXIS 20974, at *19

2  (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).[10]

3      When considering whether to grant approval, courts often "put a good deal of stock in the

4  product of an arms-length, non-collusive, negotiated resolution."  *Rodriguez v. W. Publ'g Corp.*,

5  563 F.3d 948, 965 (9th Cir. 2009).  Courts may also assess the following factors, which are

6  assessed in greater detail at final approval.  These factors are: (1) "the strength of the plaintiffs'

7  case," "the risk, expense, complexity, and likely duration of further litigation," and "the risk of

8  maintaining class action status throughout the trial," (2) "the amount offered in settlement," (3)

9  "the extent of discovery completed and the stage of the proceedings," and (4) "the experience

10  and views of counsel."  *Hanlon*, 150 F.3d at 1026.  In addition, courts review "the presence of a

11  governmental participant" and "the reaction of the class members to the proposed settlement."

12  *Id.*  These last two considerations are not significant here, as the former is not relevant, and the

13  latter cannot be gauged at this stage.

14      **1.    Plaintiffs' Case Faced Significant Hurdles on Liability and Class
               Certification.**

15      "Approval of a class settlement is appropriate when 'there are significant barriers

16  plaintiffs must overcome in making their case.'"  *Betancourt v. Advantage Human Resourcing,*

17  *Inc.*, No. 14 Civ. 01788, 2016 U.S. Dist. LEXIS 10361, at *11 (N.D. Cal. Jan. 28, 2016) (quoting

18  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851) (N.D. Cal. 2010).  Plaintiffs face

19  substantial obstacles to full recovery.  First, liability is far from guaranteed.  This litigation—a

20  lending discrimination class action on behalf of DACA recipients and CPRs—presents a

21  relatively novel theory with numerous unsettled issues.  For example, SoFi has vigorously

22  contended that its policies are lawful and justified based on heightened risks inherent in lending

23  to individuals with non-permanent immigration status.  SoFi has also argued that the Equal

---

[10]    *See also Cancilla v. Ecolab, Inc.*, No. 12 Civ. 3001, 2015 U.S. Dist. LEXIS 106249, at *9
(N.D. Cal. Aug. 12, 2015) (focusing preliminary approval analysis on "noncollusive
negotiations," the lack of "obvious deficiencies" or "preferential treatment," and being "with[in]
the range of possible approval"); Alba Conte & Herbert B. Newberg, 4 *Newberg on Class
Actions*, § 13.15 (5th ed.).

-19-

Credit Opportunity Act provides that permanence of residency and immigration status are legitimate considerations in assessing credit and repayment risk. SoFi may also highlight events in Plaintiffs' credit history to show that they were not qualified for the credit products they sought, regardless of their immigration status. Plaintiffs also face obstacles to obtaining class certification. For example, Plaintiffs would face challenges to certifying a FCRA class, as those claims are predicated on SoFi's knowledge of applicants' CPR status based on the electronic submission of conditional green cards during the online application process. Because online applicants were required to agree to SoFi's arbitration agreement, and because very few online applicants opted out of arbitration in writing, there will likely be few, if any, members of the class apart from Plaintiff Segarceanu. SoFi may also argue that Class Members' claims cannot be tried collectively due to individualized differences in their applications and credit histories, thereby preventing a finding of predominance.

### 2. The Settlement Amount Is Appropriate.

"[P]erhaps the most important factor" courts consider in determining whether to grant preliminary approval is "plaintiffs' expected recovery balanced against the value of the settlement offer." *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation marks omitted). Here, the monetary and programmatic relief provide excellent value for Class Members. Though the precise amount of the monetary awards per Class Member is not yet known, under any scenario the monetary relief under the settlement is likely to be a high percentage of their maximum damages. Similarly, the settlement provides the greatest degree of programmatic relief possible.

California Class Members are eligible for individual payments of up to $3,000 per denial of a credit application, which amounts to 75% of the $4,000 statutory damages available under the Unruh Act for each discriminatory act. Cal. Civil Code § 52(a). This is an excellent result

-20-

for California Class Members.[11]  In light of the risks of an adverse judgment on the merits or class certification, even payments lower than this amount would provide an excellent value to California Class Members.

National Class Members are eligible for individual awards of up to $1,000 per denial of a credit application, which constitutes an excellent recovery considering the challenges inherent in establishing Section 1981 liability class-wide, and in certifying a FCRA class (as described above in Section IV(B)(1).  In particular, Class Members will face significant challenges in establishing compensatory damages resulting from SoFi's denial of their Loan applications.  Given the risks on class certification and the merits, even lower payments would constitute an excellent recovery for National Class Members.

Plaintiffs also obtained the *maximum* degree of programmatic relief that Class Members could possibly obtain.  SoFi has agreed to extend Loans to current and valid DACA recipients and CPRs on the same terms and conditions as U.S. citizens.  All DACA recipients and CPRs nationwide—not just Class Members—will benefit from this Programmatic Relief, enabling hundreds of thousands of individuals to obtain credit under SoFi's comparatively advantageous rates. Thus, the Programmatic Relief achieved here provides a significant benefit to Class Members (and DACA recipients and CPRs nationwide) and is as good or better than what could have been obtained by protracted litigation and trial.

### 3.    The Extent of Discovery Supports Settlement.

---

[11]    *See, e.g.*, *Betancourt*, No. 14 Civ. 1788, 2016 U.S. Dist. LEXIS 10361, at *14 (N.D. Cal. Jan 28, 2016) (granting final approval of settlement providing approximately 9.7% of total maximum potential recovery if class members had prevailed on all claims); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13 Civ. 2540, U.S. Dist. LEXIS 78671, at *12 (N.D. Cal. June 17, 2015) (finding that a settlement constituting 7.3% of plaintiff's estimated trial award to be "within the range of reasonableness); *In re Heritage Bond Litig.*, No. 02 ML 1475, 2005 U.S. Dist. LEXIS 13555, at *62 (C.D. Cal. June 10, 2005) (calling a recovery of 36% of the total net loss an "exceptional result").

-21-

A settlement requires adequate discovery.  The touchstone of the analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery.  *Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).  Here, Plaintiffs have litigated these claims zealously for two years, conducting both formal and informal discovery along the way.  Specifically, SoFi produced relevant policies and procedures, underwriting materials, application materials and applicant data, as well as records from its customer service phone number dedicated to serving DACA recipients and other non-citizens.  Miazad Decl. ¶ 19.  Plaintiffs produced their online application materials, screen shots of online accounts, credit reports, emails with SoFi personnel, and evidence of phone calls with SoFi's customer service department.  *Id.* ¶ 20.  Thus, the settlement results from Class Counsel's informed judgment about the strengths and weaknesses of the claims.

### 4.    Counsel's Experience and Views Support Approval.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  *DIRECTV, Inc.*, 221 F.R.D. at 528 (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]"  *Rodriguez*, 563 F.3d at 967. Class Counsel are some of the most experienced class action litigators in the country. Miazad Decl. ¶¶ 4-9; Hall Decl. ¶¶ 6-7.  Class Counsel specialize in prosecuting complex employment and civil rights class actions, and over many years have successfully—and unsuccessfully—litigated many such cases, putting them in a strong position to weigh the strengths and weaknesses of Plaintiffs' claims and SoFi's defenses. *Id.*; *see also* Miazad Decl., Ex. B (listing comparable past distributions).  Based on their extensive experience, Class Counsel believe that the settlement is fair, reasonable, and adequate.

### 5.    The Parties Participated in Arms-Length Negotiations Before an Experienced Neutral Mediator.

A settlement reached "in good faith after a well-informed arms-length negotiation" is

-22-

1   presumed to be fair. *Fernandez v. Victoria Secret Stores, LLC*, No. 06 Civ. 04149, 2008 U.S.

2   Dist. LEXIS 123546, at *15 (C.D. Cal. July 21, 2008).[12] Here, the settlement easily meets the

3   rigorous scrutiny required in this District and by *Roes, 1–2*, for both substantive and procedural

4   reasons. First, the settlement is substantively strong, providing excellent monetary relief and

5   robust programmatic relief. Second, the settlement is procedurally sound, (a) having been

6   reached after extensive, hard-fought adversarial litigation, with extensive discovery and motion

7   practice, (b) with no parallel litigation that could give rise to reverse auction concerns, and (c)

8   after a full-day mediation session, overseen by a highly experienced mediator with particular

9   expertise in complex class actions, and followed by months of further negotiations between the

10  Parties. Miazad Decl. ¶¶ 13-28.

11      **C.      The Proposed Notice Is Clear and Adequate.**

12          The proposed Notice is the "best notice that is practicable under the circumstances." Fed.

13  R. Civ. P. 23(c)(2)(B), and is "reasonable," Fed. R. Civ. P. 23(e)(1). The proposed Notice and

14  Claim Form are consistent with Northern District of California's Procedural Guidance for Class

15  Action Settlements and modern best practices set forth by the Federal Judicial Center.[13] SA Ex. 1

16  (Notice), Ex. 2 (Claim Form). The Notice and Claim Form are easily understandable and

17  include: (1) contact information for Class Counsel to answer questions; (2) the address for a

18  website maintained by the Settlement Administrator that will link to important documents in the

19  case; and (3) instructions on how to access the case docket via PACER. *Id.* The Notice will

20  state the date of the fairness hearing for final approval, that the date may change without further

21  notice to the Class, and that Class Members should check the settlement website or the Court's

22

23

---

24  [12]      *See also Wren v. RGIS Inventory Specialists*, No. 06 Civ. 05778, 2011 U.S. Dist. LEXIS

25  38667,at *79 (N.D. Cal. Apr. 1, 2011); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 325 (N.D. Cal. 2013) (private mediation "support[s] the conclusion that the settlement process was not collusive").

26  [13]      *See Illustrative Forms of Class Action Notices: Overview*, Fed. Judicial Ctr.,

27  https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction (last visited April 20, 2022).

28

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY SETTLEMENT
APPROVAL
Case No. 4:20-cv-03386 (HSG)

PACER site to confirm that the date has not been changed.  SA Ex. 1.  The Notice explains the deadlines for objecting, opting out, and submitting a Claim Form.  *Id.*

The Claim Form is clear, user-friendly, and focused on the key information concerning Class Members.  SA Ex. 2.  The Claim Form is helpfully pre-printed with a fillable and returnable verification form and Form W-9 (with postage pre-paid) to ensure that claimants receive optimal tax treatment for their class payments.  *Id.*  It will also be available online, and transmitted via email, so that Class Members can submit Claim Forms via a secure online submission form, or via email.  *Id.*

## V.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.

Pursuant to the deadlines set forth in Plaintiffs, in consultation with SoFi, propose the following schedule for finalizing and implementing the settlement:

| Event | Proposed Date |
|---|---|
| **Preliminary Approval Hearing** | June 2, 2022 |
| Court enters Preliminary Approval Order* | July 8, 2022 |
| SoFi provides class list data to Settlement Administrator | July 22 |
| Settlement Administrator disseminates Notice | August 8 |
| Settlement Administrator sends Reminder notices | September 7 |
| Deadline for Class Members to file Claim Forms, opt out, and/or object | October 7 |
| Deadline for Class Members to file Official Documentation, if requested | October 28 |
| Plaintiffs file Fee and Incentive Award Motions | November 10 |
| Plaintiffs file Final Approval motion | December 1 |
| **Final Approval Hearing** | December 15 |
| Final Approval Order* | February 1, 2023 |
| Effective Date (assuming no appeals)* | March 8, 2023 |
| SoFi funds Settlement | March 22, 2023 |
| Settlement Administrator mails checks to Class | April 8, 2023 |

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY SETTLEMENT
APPROVAL

* Assumed date for purposes of calculating subsequent dates.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) certify, for settlement purposes only, settlement classes pursuant to Federal Rule 23(a) and 23(b)(3); (2) grant preliminary approval of the Settlement; (3) appoint Plaintiffs Calin Constantin Segarceanu, Emiliano Galicia and Josue Jimenez as Class Representatives, appoint Plaintiffs' counsel as Class Counsel, and appoint Rust as Settlement Administrator; (4) approve mailing to the Class Members the proposed Notice, and the establishment of a settlement website; and (5) schedule a hearing for final approval of the Settlement at least one hundred forty (140) days after entry of the Preliminary Approval Order.

Dated: April 20, 2022              Respectfully submitted,

                                   /s/ *Ossai Miazad*
                                   Ossai Miazad (admitted *pro hac vice*)
                                   **OUTTEN & GOLDEN LLP**
                                   685 Third Avenue, 25th Floor
                                   New York, NY 10017
                                   Telephone: (212) 245-1000
                                   Facsimile: (646) 509-2060
                                   om@outtengolden.com

                                   Moira Heiges-Goepfert (Cal. Bar No. 326861)
                                   **OUTTEN & GOLDEN LLP**
                                   One California Street, 12th Floor
                                   San Francisco, CA 94111
                                   New York, NY 10017
                                   Telephone: (212) 245-1000
                                   Facsimile: (415) 638-8810
                                   mhg@outtengolden.com

                                   **LAWYERS FOR CIVIL RIGHTS**
                                   Sophia L. Hall (*pro hac vice*)
                                   61 Batterymarch Street, 5th Floor
                                   Boston, MA 02110
                                   Telephone: (617) 482-1145
                                   Facsimile: (617) 482-4392
                                   shall@lawyersforcivilrights.org

-25-