UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN JUAREZ, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>SOCIAL FINANCE, INC., et al.,<br><br>　　　　Defendants. | Case No. 20-cv-03386-HSG<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL**<br><br>Re: Dkt. No. 93 |

Pending before the Court is Plaintiffs' motion for preliminary approval of class action settlement. *See* Dkt. No. 93. The Court held a hearing on the motion. For the reasons detailed below, the Court **GRANTS** the motion.

**I.　BACKGROUND**

　**A.　Factual Allegations**

Plaintiffs Ruben Juarez, Calin Constantin Segarceanu, Emiliano Galicia, and Josue Jimenez allege that Defendants Social Finance, Inc. d/b/a SoFi and SoFi Lending Corp. d/b/a SoFi (collectively, "SoFi") engaged in lending discrimination. Plaintiffs applied for loans, but allege that SoFi denied their applications because they were not U.S. citizens or lawful permanent residents ("LPRs"). *See* Dkt. No. 62 ("SAC") at ¶¶ 120–124. Rather, Plaintiffs had either Deferred Action for Childhood Arrivals ("DACA") status or temporary green cards as conditional permanent residents ("CPRs").[1] In May 2020, Plaintiffs brought a class action lawsuit against SoFi, alleging lending discrimination based on alienage and immigration status in violation of federal and California state law. In early December 2019, after discussions with Plaintiffs'

---

[1] DACA is a form of deferred action against removal, a discretionary grant of authorized stay by the federal government. *See* SAC at ¶¶ 4, 34–42.

counsel in this case, SoFi changed its policy to make DACA recipients eligible for loans, but only if they applied by telephone with a co-signer who is a U.S. citizen or LPR—two requirements that are not imposed on citizen applicants. *Id.* at ¶ 5. At the same time, SoFi also created a designated customer service number to field calls and initiate applications from DACA recipients and other non-citizens seeking loans (the "877 number"). *See* Dkt. No. 93-2 at ¶ 11.

**B.   Settlement Agreement**

The parties engaged in an all-day mediation session with JAMS arbitrator David Geronemus, and have reached a settlement of this putative class action. *See* Dkt. No. 93-3, Ex. A ("SA"). They have filed a motion for preliminary settlement approval. Dkt. No. 93. The key terms of the settlement are as follows:

Class Definition: The parties have proposed two Settlement Classes:

- "National Class" means those individuals who
  - (i) applied for or attempted to apply for any credit product from SoFi; (ii) between December 19, 2019 through the date of preliminary approval; (iii) who held valid and unexpired DACA or CPR status at the time they applied for or attempted to apply for credit; (iv) who called SoFi at the designated 877 number regarding the application as set forth in the class data produced by SoFi; (v) who were denied as set forth in the class data produced by SoFi; and (vi) who were not California residents as indicated in the "applied state" data field as set forth in the class data produced by SoFi; or
  - (i) applied for or attempted to apply for any credit product from SoFi; (ii) between May 19, 2017 through the date of preliminary approval; (iii) who held valid and unexpired DACA or CPR status at the time they applied for or attempted to apply for credit; (iv) who opted out of SoFi's arbitration provision in writing; (v) who were denied as set forth in the class data produced by SooFi; and (vi) who were not California residents as set forth in the class data produced by SoFi;
  - Excluded from the National Class are SoFi, all officers, directors, and employees

of SoFi, and their legal representatives, heirs, or assigns, and any Judges to whom the Action is assigned, their staffs, and their immediate families.

- "California Class" means those individuals who
  - (i) applied for or attempted to apply for a credit product from SoFi; (ii) between December 19, 2019 through the date of preliminary approval; (iii) who held valid and unexpired DACA or CPR status at the time they applied for or attempted to apply for credit; (iv) who called SoFi at the designated 877 number regarding the application as set forth in the class data produced by SoFi; (v) who were denied as set forth in the class data produced by SoFi; and (vi) who were California residents as indicated in the "applied state" data field as set forth in the class data produced by SoFi; or
  - (i) applied for or attempted to apply for a credit product from SoFi; (ii) between May 19, 2017 through the date of preliminary approval; (iii) who held valid and unexpired DACA or CPR status at the time they applied for or attempted to apply for credit; (iv) who opted out of SoFi's arbitration provision in writing; (v) who were denied as set forth in the class data produced by SoFi; and (vi) who were California residents as set forth in the class data produced by SoFi.
  - Excluded from the California Class are SoFi, all officers, directors, and employees of SoFi, and their legal representatives, heirs, or assigns, and any Judges to whom the Action is assigned, their staffs, and their immediate families. *See* SA at § 1.9.

The parties have explained that these settlement classes were designed to exclude applicants subject to SoFi's arbitration agreement. *See* Dkt. No. 93 at 5; *see also* Dkt. 56 at 7–9 (Order Denying First Motion to Compel).

Settlement Benefits: Defendant will make a $155,000 non-reversionary payment for the settlement fund. *See* SA at §§ 3.3.2, 3.3.3. It will also provide an additional $25,000 for administration costs. *See id.* at § 3.3.1. Each California Class Member who submits a Verified Claim shall be entitled to $3,000 per denied application. *See id.* at § 3.3.5. Each National Class Member who submits a Verified Claim shall be entitled to $1,000 per denied application. *Id.*

Release: All Settlement Class Members will release Defendant and its subsidiaries from:

> any and all claims, defenses, demands, objections, actions, causes of action, rights, offsets, setoffs, suits, damages, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever, in law or in equity, for any relief whatsoever, including monetary, sanctions or damage for contempt, injunctive, or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, penalties, interest, attorneys' fees, costs, or expenses, whether a known or Unknown Claim, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that in any way concern, arise out of, or relate to allegations that were or could have been asserted in the Class Action Complaint related to SoFi's alleged denial of Class Members' loan applications based on alienage, lack of U.S. citizenship and/or immigration status, including, but not limited to, any claims under 42 U.S.C. Section 1981, the California Unruh Act (Cal. Civil Code §§ 51 and 52 et seq.), or other state civil rights statutes, the Equal Credit Opportunity Act, and the Fair Credit Reporting Act. It is the intention of the Class Representatives to provide a general release of all Released Claims against the Releasees for claims related to the denial of their
> loan applications.

*See* SA at § 1.37; *see also id.* at §§ 10.1–10.5.

Incentive Award: The named Plaintiffs may apply for incentive awards of no more than $5,000 each. *See* SA at §§ 3.3.4, 15.2. However, Plaintiff Juarez—who the parties agree is not a member of either class as defined above—may apply for an incentive award not to exceed $6,000.[2] *Id.*

Attorneys' Fees and Costs: Class Counsel will file an application for attorneys' fees not to exceed $300,000. *See* SA at §§ 3.3.1, 15.1.

Opt-Out Procedure: Settlement Class Members must submit a written request for exclusion to opt out of the Settlement. *See* SA at § 11.1–11.6. Settlement Class Members may also submit written objections to the Settlement. *See id.* at § 12.1–12.7. During the hearing on the motion for preliminary approval, the Court expressed some concern that under the Settlement, individuals wishing to opt out had to submit documentation reflecting their immigration status. The parties have since agreed to amend the Settlement so that documentation about immigration

---

[2] *See* Dkt. No. 93 at 8, & n.3; *see also id.* at 10–11 (explaining that Mr. Juarez applied via telephone before SoFi created the 877 customer service line).

4

status is not required to opt out.  *See* Dkt. No. 100.

## II.     PROVISIONAL CLASS CERTIFICATION

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).  Class certification is a two-step process.  *First*, a plaintiff must establish that each of the four requirements of Rule 23(a) is met:  numerosity, commonality, typicality, and adequacy of representation.  *Id.* at 349.  *Second*, it must establish that at least one of the bases for certification under Rule 23(b) is met.  Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), it must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai II*").  When deciding whether to certify a litigation class, a district court must consider manageability at trial.  *Id*.  However, this concern is not present in certifying a settlement class.  *Id*. at 556–57.  In deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses."  *Id*. at 557.

### A.     Rule 23(a) Certification

The Court finds that all the requirements of Rule 23(a) are met:

- **Numerosity.** Joinder of the 690 estimated class members would be impracticable.  *See* Dkt. No. 99 at ¶¶ 5–7 (discussing potential class size).
- **Commonality**. Common questions of law and fact include whether SoFi's lending policies violate the Civil Rights Act of 1866, 42 U.S.C. § 1981, or California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51 *et seq.*
- **Typicality.**  Plaintiffs' claims are both factually and legally similar to those of the putative class because each (1) lived in California or the United States; (2) was a DACA or CPR recipient when they applied for a loan from SoFi; and (3) allege that

5

he was denied credit under SoFi's lending policies because he was not a U.S. citizen or LPR.

- **Adequacy of Representation.** The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either Plaintiffs or counsel have a conflict with other class members. Plaintiffs' counsel has been appointed class counsel in numerous federal and state class actions. *See* Dkt. No. 93-2 at ¶¶ 4–9; Dkt. No. 93-5 at ¶¶ 5–9. The Court finds that proposed class counsel and Plaintiffs have prosecuted this action vigorously on behalf of the class to date, and will continue to do so.

### B. Rule 23(b)(3) Certification

The Court also finds that the predominance and superiority requirements of Rule 23(b)(3) are met:

- **Predominance.** The Court concludes that for purposes of settlement, common questions predominate here because Plaintiffs challenge SoFi's lending policies and eligibility criteria that apply to all Class Members.
- **Superiority.** A class action enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them. Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

### C. Class Representative and Class Counsel

Because the Court finds that Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs Segarceanu, Galicia, and Jimenez as Class Representatives.[3] When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Counsel have investigated and litigated this case throughout its existence and have submitted declarations detailing their expertise in representing plaintiffs in class action suits.

---

[3] The parties appear to agree that because Plaintiff Juarez applied for a loan over the phone before SoFi created the "877" customer service line for DACA and other non-citizen applicants in December 2019, his calls are not reflected in SoFi's call-log data, and he is not included in either the California or National Classes. *See* Dkt. No. 93 at 11; *see also* Dkt. No. 93-2 at ¶ 55.

1  *See* Dkt. No. 93-2 at ¶¶ 4–9; Dkt. No. 93-5 at ¶¶ 5–9.  Accordingly, the Court appoints Outten &
2  Golden LLP and Lawyers for Civil Rights as Class Counsel.  *See* Fed. R. Civ. P. 23(g)(1)(A)
3  (listing factors courts must consider when appointing class counsel).

### III. PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional class certification is appropriate, the Court considers whether it should preliminarily approve the parties' class action settlement.

#### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted).  Such settlement agreements "'must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).  A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id*. (quotations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement:  (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo*

7

*Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted).  Courts lack the authority, however, to "delete, modify or substitute certain provisions.  The settlement must stand or fall in its entirety."  *Hanlon*, 150 F.3d at 1026.

### B. Analysis

#### i. Evidence of Conflicts and Signs of Collusion

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest.  *See Roes*, 944 F.3d at 1049.  The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant.  *Id*.

#### a. Clear Sailing Provision

Here, the Settlement Agreement contains a clear sailing arrangement, which states that SoFi will not oppose Plaintiffs' motion for attorneys' fees and costs so long as the amount requested does not exceed $300,000.  *See* SA at § 15.1.2.  The Ninth Circuit has noted that clear sailing arrangements are "important warning signs of collusion,"  because "'[t]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class.'"  *Roes*, 944 F.3d at 1051 (quoting *In re Bluetooth*, 654 F.3d at 948).  Accordingly, when confronted with a clear sailing provision, the district court has a heightened duty to "scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."  *Id.* (quotations omitted).

Under the Settlement Agreement, any attorneys' fees award will not be deducted from the Settlement Fund, but will instead be paid separately by SoFi.  *See* SA at § 15.1.  When deciding to award attorney's fees and costs in such circumstances, courts generally apply the lodestar method. *See In re Bluetooth*, 654 F.3d at 941–42.  The Court understands that if it were to award $300,000 in attorneys' fees, this is significantly more than would be distributed to Class Members. However, in addition to the monetary award, SoFi has also agreed to change its lending policies

such that DACA and CPR applicants will be evaluated for consumer credit product eligibility on the same terms as U.S. citizen applicants. *See* Dkt. No. 93 at 7. In any event, the Court is cognizant of its obligation to review class fee awards with particular rigor, and at the final approval stage will carefully scrutinize the circumstances and determine what attorneys' fee awards is appropriate in this case. At this stage, the Court does not find that the clear sailing provision weighs against preliminary approval.[4]

### b. *Cy Pres* Distribution

The Court must also evaluate whether the parties' proposed *cy pres* recipient is appropriate. A *cy pres* award must qualify as "the next best distribution" to giving the funds to class members. *Dennis*, 697 F.3d at 865. "Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary," and there must be a "driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* (quotation omitted). That is to say, a *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." *Id.* (quotation omitted). A *cy pres* distribution is not appropriate if there is "no reasonable certainty that any class member would benefit from it." *Id*. (quotation omitted).

Here, the parties have selected the University of California Immigrant Legal Services Center as its *cy pres* recipient. *See* SA at § 3.3.6. The University of California Immigrant Legal Services Center provides direct legal services to immigrant students and their families, including DACA recipients and CPRs, to address a variety of legal needs. The Court preliminarily finds that the University of California Immigrant Legal Services Center shares the interests of Class Members in seeking equitable access to consumer loan products for DACA recipients and other immigrant applicants, including with respect to student loans and loan refinancing. Accordingly, the Court preliminarily finds that there is a sufficient nexus between the *cy pres* recipient and the Settlement Classes.

---

[4] To the extent Plaintiff's counsel argues that it is entitled to attorneys' fees in the amount of $300,000, *see* Dkt. No. 93 at 11–12, the Court need not—and does not—decide that issue now. Preliminary approval is not an endorsement or pre-approval of any future fee request.

### ii. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any Class Member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*, 2018 WL 6099948, at *8 (quotations omitted).

Although the settlement agreement authorizes the Class Representatives to seek incentive awards of no more than $5,000 each and Plaintiff Juarez to seek an incentive award of no more than $6,000 for their role in this lawsuit, the Court will ultimately determine whether they are entitled to such an award and the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient evidence to allow the Court to evaluate their award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). As discussed during the hearing, the Court has some concern as to whether Plaintiff Juarez is properly entitled to any incentive award since he is not a member of either settling class. The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

### iii. Settlement within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of

possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiffs' case.

Here, California Class Members are eligible under the Settlement Agreement to receive individual payments of up to $3,000 per denial of a credit application, which amounts to 75% of the $4,000 statutory damages available under the Unruh Civil Rights Act. And National Class Members are eligible to receive individual payments of up to $1,000 per denial of a credit application. SoFi has also agreed to extend loans to current and valid DACA and CPR recipients on the same terms and conditions as U.S. citizens. Plaintiffs acknowledge that they would face substantial risk in continuing to litigate this case, including certifying the class and prevailing at trial. SoFi has vigorously asserted that its policies are lawful and justified based on heightened risks of lending to individuals with non-permanent immigration status. There may also be individualized reasons why Class Members were not qualified for loans, irrespective of their immigration status. SoFi also argues that online applicants are asked to agree to SoFi's arbitration agreement, such that their claims would be subject to arbitration. The Court finds that the settlement amount, given these risks, weighs in favor of granting preliminary approval.

### iv. Obvious Deficiencies

The Court also considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

\* \* \*

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval. The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## IV. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who

11

can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). District courts have "broad power and discretion vested in them by [Rule 23]" in determining the contours of appropriate class notice. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed that a third-party settlement administrator will send class notice via first-class U.S. mail to each potential class member at their last known address, as provided by SoFi and updated by the administrator as appropriate. *See* SA at §§ 2.5, 7.3, 7.5. As the parties explained during the hearing, they do not know which applicants held CPR or DACA status during the relevant time period. Accordingly, the Settlement Administrator will send notice to all those who according to SoFi's records (1) called SoFi's 877 customer service number for non-citizen applicants and were not approved for a loan product; or (2) applied or attempted to apply online, opted out of the arbitration provision, and were not approved for a loan product between May 19, 2017 and the date of this order. *See* Dkt. No. 93 at 4–5; *see also* Dkt. No. 99 at ¶¶ 4–7. The parties estimate that notice will be sent to approximately 2,300 potential class members, and that of this 2,300, approximately 20% to 30% will have (or have had) DACA or CPR status such that they would be eligible to participate in the Settlement as Class Members. *Id.*

Any letters returned as undeliverable will be sent to any updated address provided with the returned mail. *See id.* at § 7.5. If no forwarding address is provided, the settlement administrator will attempt to determine the correct address using the National Change of Address Database. *Id.*

1    It will also send notice via email and text, where email addresses and telephone numbers are
2    available. *See id.* at §§ 2.5, 7.3, 7.5. The Settlement Administrator will also mail a reminder
3    notice 30 days after the initial notice is sent. *See id.* at § 7.6; *see also* Dkt. No. 93-3, Ex. 4. The
4    Court finds that the proposed notice process is "reasonably calculated, under all the circumstances,
5    to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045 (quotation
6    omitted).

7    As to the substance of the notice, the parties have attached a copy of their proposed class
8    notice to the Settlement Agreement. *See* Dkt. No. 97-3, Ex. C; Dkt. No. 93-3, Ex. 3; *see also* Dkt.
9    No. 100 at ¶ 2. The notice explains how to submit a claim form and opt out of or object to the
10   Settlement Agreement. *Id.* The Settlement Administrator will also establish a website, which will
11   have copies of the relevant case documents. *See* SA at § 7.8. To further enhance understanding,
12   the Settlement Administrator will operate the website in English and Spanish, and will operate a
13   dual English-Spanish toll-free contact center. *See id.* at § 6.2. The proposed notice includes
14   instructions in Spanish explaining how Class Members can access the website and phone number
15   for further information. *See* Dkt. No. 97-3, Ex. C.

16   The notice also informs Class Members that Class Counsel will file a motion with the
17   Court for attorneys' fees, as well as reimbursement of litigation costs and expenses advanced by
18   Class Counsel. *See id.* It also provides that Plaintiffs Segarceanu, Galicia and Jimenez may
19   request up to $5,000 for their services as Class Representatives, and Plaintiff Juarez may request
20   up to $6,000 for his contributions to this case. *Id.*

21   To enable class members to review the motion for attorneys' fees and the motion for
22   incentive award, Class Counsel shall include language in the settlement notice: (1) indicating the
23   deadline for filing the attorneys' fees motion and request for Plaintiffs' incentive award;
24   (2) specifically stating the deadline for any class member objections to these motions; and
25   (3) informing class members how to access the motion and supporting materials. *See In re*
26   *Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010) (holding that under
27   Rule 23(h), class members must be given a full and fair opportunity to examine and object to
28   attorneys' fees motion).

1  The Court finds that with these changes, the content of the proposed notice provides
2 sufficient information about the case and thus conforms with due process requirements.  *See*
3 *Hyundai II*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the
4 settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come
5 forward and be heard." (quotation omitted)).

6 **V.    CONCLUSION**

7  The Court **GRANTS** the motion for preliminary approval.  The parties are **DIRECTED** to
8 meet and confer and stipulate to a schedule of dates for each event listed below, which shall be
9 submitted to the Court within seven days of the date of this Order:

| Event | Date |
| --- | --- |
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment, at least 45 days after the filing of the motion for attorneys' fees and incentive payments | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan with the edits identified above.

**IT IS SO ORDERED.**

Dated:   12/15/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge