Moira Heiges-Goepfert (SBN 326861)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
New York, NY 10017
Telephone: (415) 223-7847
Facsimile: (415) 638-8810
mhg@outtengolden.com

Ossai Miazad (*pro hac vice*)
**OUTTEN & GOLDEN LLP**
1225 New York Ave NW, Suite 1200B
Washington, D.C. 20005
Telephone: (202) 914-5097
Facsimile: (202) 847-4410
om@outtengolden.com

Sophia L. Hall (*pro hac vice*)
**LAWYERS FOR CIVIL RIGHTS**
61 Batterymarch Street, 5th Floor
Boston, MA 02110
Telephone: (617) 482-1145
Facsimile: (617) 482-4392
shall@lawyersforcivilrights.org

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

RUBEN JUAREZ, CALIN CONSTANTIN
SEGARCEANU, EMILIANO GALICIA, and
JOSUE JIMENEZ, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

    v.

SOCIAL FINANCE, INC. d/b/a SOFI, and
SOFI LENDING CORP. d/b/a SOFI,

        Defendant.

Case No. 4:20-cv-03386 (HSG)

**NOTICE OF MOTION AND
PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT**

Judge: Haywood S. Gilliam, Jr.
Hearing Date: May 11, 2023
Hearing Time: 2:00 p.m.
Courtroom: 2, 4th floor

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on May 11, 2023 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 on the 4th floor of this Court's Oakland Courthouse, located at 1301 Clay Street, Oakland, California, Plaintiff Ruben Juarez, individually (the "Individual Plaintiff"), and Plaintiffs Calin Constantin Segarceanu, Emiliano Galicia and Josue Jimenez, individually and as class representatives on behalf of the Class (together "the Class Representatives"), will, and hereby do, move this Court for an order: (1) granting, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, final approval of the parties' proposed class action settlement ("Settlement"), and entry of judgment in accordance with the Settlement; and (2) granting, pursuant to Rules 23(a) and 23(b)(3), final class certification of the Settlement Class conditionally certified in the Preliminary Approval Order.  ECF No. 101.

Plaintiffs make this motion on the grounds that the Settlement is fair, adequate, and reasonable, was reached through arm's-length negotiations with an experienced mediator, and has drawn a highly favorable response from the Class, as described in the attached memorandum.  The Settlement Agreement provides two important forms of relief for the Class Members: (1) programmatic relief whereby SoFi will change its lending policies such that DACA and CPR applicants will be evaluated for consumer credit product eligibility on the same terms as U.S. citizen applicants and (2) a Settlement Fund of $155,000 to compensate Class Members who choose to file claim forms.

This Motion is noticed to be heard with Plaintiffs' previously filed Motion for Approval of Attorneys' Fees, Costs, and Service Awards.  ECF No. 106.  The Court preliminary approved the Settlement Agreement on December 15, 2022.  ECF No. 101.  Since then, Notice was provided to the settlement Class Members.  No Class Members have opted out of the settlement and no Class Member has objected.  The motion is based on this notice of motion and motion; the memorandum in support of the motion; the accompanying Declaration of Ossai Miazad ("Miazad Decl."); the Declaration of Samantha Ries for Rust Consulting, Inc. ("Rust Decl."); the Court's record of this action; all matters of which the

1  Court may take notice; and any oral evidence presented at the final approval hearing on the

2  motion.

3   Dated: April 27, 2023                          Respectfully submitted,

4                                                  By:  /s/ Ossai Miazad

5                                                       Ossai Miazad

6                                                  Ossai Miazad (*pro hac vice*)
                                                   **OUTTEN & GOLDEN LLP**
7                                                  1225 New York Ave NW, Suite 1200B
                                                   Washington, D.C. 20005
8                                                  Telephone: (202) 914-5097
                                                   Facsimile: (202) 847-4410
9                                                  om@outtengolden.com

10                                                 Moira Heiges-Goepfert (SBN 326861)
                                                   **OUTTEN & GOLDEN LLP**
11                                                 One California Street, 12th Floor
                                                   San Francisco, CA 94111
12                                                 New York, NY 10017
                                                   Telephone: (415) 223-7847
13                                                 Facsimile: (415) 638-8810
                                                   mhg@outtengolden.com
14

15                                                 Sophia L. Hall (*pro hac vice*)
                                                   **LAWYERS FOR CIVIL RIGHTS**
16                                                 61 Batterymarch Street, 5th Floor
                                                   Boston, MA 02110
17                                                 Telephone: (617) 482-1145
                                                   Facsimile: (617) 482-4392
18                                                 shall@lawyersforcivilrights.org

19                                                 *Attorneys for Plaintiffs and the Class*
20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2    I.    INTRODUCTION ........................................................................................ 1

3    II.   RELEVANT BACKGROUND ................................................................... 1

4          A.    Settlement Negotiations and Preliminary Approval ........................ 2

5          B.    Settlement Overview ....................................................................... 3

6                1.    Programmatic Relief ............................................................. 3

7                2.    Monetary Relief .................................................................... 3

8                3.    The Settlement Classes ......................................................... 4

9          C.    Notice and Claims Process.............................................................. 7

10         D.    CAFA Notice Requirements Were Satisfied. ................................. 8

11   III.  ARGUMENT ............................................................................................. 9

12         A.    The Best Practicable Notice of Settlement Has Been Provided to
                  the Class. ......................................................................................... 9

13         B.    Final Certification of the Rule 23 Classes is Proper. ................... 10

14
           C.    Final Approval of the Class Action Settlement Should Be Granted
15               Because the Settlement Is Fair, Adequate, and Reasonable and
                 Appropriate under Rule 23 ............................................................ 10

16               1.    Plaintiffs' Case Faced Significant Hurdles on Liability and Class
17                     Certification. ....................................................................... 11

18               2.    The Settlement Amount Is Appropriate............................... 12

19               3.    The Extent of Discovery Supports Settlement.................... 13

20               4.    Counsel's Experience and Views Support Approval........... 14

21               5.    Class Members Have Reacted Positively to the Settlement. ............ 14

22               6.    The Requirements for Approval under Rule 23(e)(2) Are Met. ........ 15

23   IV.   CONCLUSION........................................................................................ 17

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Bert v. AK Steel Corp.*,
   No. 12 Civ. 467, 2008 U.S. Dist. LEXIS 111711 (S.D. Ohio Oct. 23, 2008) ................... 16

*Betancourt v. Advantage Human Resourcing, Inc.*,
   No. 14 Civ. 01788, 2016 U.S. Dist. LEXIS 10361 (N.D. Cal. Jan. 28, 2016) ............. 11, 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 *(*9th Cir. 2011*)* ........................................................... 16

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ............................................................ 9

*Brown v. Hain Celestial Grp., Inc.*,
   No. 11 Civ. 03082, 2014 U.S. Dist. LEXIS 162038 (N.D. Cal. Nov. 18, 2014) ............. 5, 6

*Churchill Village, LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ............................................................ 9

*Cotter v. Lyft, Inc.*,
   176 F. Supp. 3d 930 (N.D. Cal. 2016) .................................................. 12

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,
   213 F.3d 454 (9th Cir. 2000) .......................................................... 13

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................... 9

*Fernandez v. Victoria Secret Stores, LLC*,
   No. 06 Civ. 04149, 2008 U.S. Dist. LEXIS 123546 (C.D. Cal. July 21, 2008) ................. 16

*Ford v. CEC Entm't Inc.*,
   No. 14 Civ. 677, 2015 U.S. Dist. LEXIS 191966 (S.D. Cal. Dec. 14, 2015) ................... 10

*Gonzalez v. Pritzker*,
   No. 10 Civ. 3105, 2016 U.S. Dist. LEXIS 131277 (S.D.N.Y. Sept. 20, 2016) ................. 15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011, 1026 (9th Cir. 1998) ................................................ 11, 16

*In re Heritage Bond Litig.*,
   No. 02 ML 1475, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ............... 12, 13

*Mills v. Capital One*,
   N.A., No. 14 Civ. 1937, 2015 U.S. Dist. LEXIS 133530 (S.D.N.Y. Sept. 30, 2015) ......... 16

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*,
   112 Cal. Rptr. 3d 324 (Cal. Ct. App. 2010) ........................................... 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................. 14, 15

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .......................................................... 11, 14, 16

*Roes v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ................................................................. 11, 16

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................ 10

*Stovall-Gusman v. W.W. Granger, Inc.*,
    No. 13 Civ. 2540, U.S. Dist. LEXIS 78671, (N.D. Cal. June 17, 2015) ..................... 12, 13

*Tijero v. Aaron Bros.*, Inc.,
    301 F.R.D. 314 (N.D. Cal. 2013) .................................................................. 16

*Victorino v. FCA US LLC*,
    No. 16 Civ. 1617, 2020 U.S. Dist. LEXIS 155991 (S.D. Cal. Aug. 27, 2020) ................... 9

*Wallace v. Countrywide Home Loans, Inc.*,
    No. 08 Civ. 1463, 2014 U.S. Dist. LEXIS 198351 (C.D. Cal. July 2, 2014) ..................... 6

*Yanez v. HL Welding, Inc.*,
    No. 20 Civ. 1789, 2021 U.S. Dist. LEXIS 135234 (S.D. Cal. July 20, 2021) ................. 5, 6

*Zamora v. Ryder Integrated Logistics, Inc.*,
    No. 13 Civ. 2679, 2014 U.S. Dist. LEXIS 184096 (S.D. Cal. Dec. 23, 2014) ................... 6

**Statutes**

28 U.S.C. § 1715 .................................................................................... 8

42 U.S.C. § 1981 .......................................................................... 4, 13, 17

Cal. Civil Code § 52(a) ............................................................................ 12

**Other**

Fed. R. Civ. P. 23 ........................................................................... *passim*

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL

## I.    INTRODUCTION

Plaintiff Ruben Juarez filed this case so that he and others similarly situated to him would have the opportunity to apply and be considered for lending opportunities with Defendants Social Finance, Inc. d/b/a SoFi and SoFi Lending Corp. d/b/a SoFi (together "SoFi") on the basis of their credit worthiness and not their citizenship or immigration status. This Settlement of which Plaintiffs respectfully seek final approval addresses the precise policy underlying Plaintiffs' claim of discrimination. Critically, Sofi has agreed to change their lending policies to make credit and loans available to DACA and CPR recipients on the same terms and conditions as those offered to U.S. citizens, fully eliminating the harm challenged by the lawsuit for future applicants.

The Settlement also provides for monetary relief in the form of a Settlement Fund[1] in the amount of $155,000 and an additional $25,000 in administration costs and up to $300,000 in attorneys' fees and costs. The Settlement, which the Court preliminarily approved on December 15, 2022, was reached after two years of litigation and extensive negotiation, and has received a positive response from the Class. As of April 24, 2023 144 Verified Claims (41 Verified California Class Claims and 103 Verified National Class Claims Class) were submitted by 111 Class Members. Rust Decl. ¶ 18. No Class Members have opted out or submitted an objection. *Id.* ¶¶ 15-16.

## II.    RELEVANT BACKGROUND

As described in Plaintiffs' Motion for Preliminary Approval, ECF No. 93, and Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Service Awards, ECF No. 106, Class Counsel has dedicated hundreds of hours to this highly contested litigation and engaged in extensive arm's-length settlement negotiations, resulting in significant relief to the Class.[2] *See* Declaration of Ossai Miazad ("Miazad Decl.") ¶ 10. The Settlement achieved by Class Counsel is

---

[1]    Unless otherwise stated, all capitalized terms are used as defined in the Settlement Agreement. ECF No. 93-3 (Settlement Agreement).

[2]    A full discussion of the relevant factual and procedural background is set forth in Plaintiffs' Motion for Preliminary Approval, ECF No. 93, and Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Service Awards, ECF No. 106.

procedurally sound: (a) having been reached after two years of hard-fought, adversarial litigation, including discovery and extensive motion practice (including briefing oppositions to a motion to dismiss and strike, and two motions to compel arbitration); (b) with no parallel litigation that could give rise to reverse auction concerns; and (c) after a full-day mediation session, overseen by a highly experienced mediator with particular expertise in complex class actions, and followed by months of further negotiations between the parties.  *Id.* ¶ 11.

### A.    Settlement Negotiations and Preliminary Approval

On July 15, 2021, the parties participated in a private mediation session with experienced JAMS arbitrator David Geronemus, during which they were initially unable to reach a settlement. Miazad Decl. ¶ 12.  Following the July mediation, the parties continued to engage with the mediator, and with each other, to explore avenues for a potential resolution, while simultaneously moving forward with litigation.  *Id*. ¶ 13.  In November 2021, the parties reached a tentative agreement on the materials terms of a settlement, and thereafter stipulated to a stay of litigation pending further negotiations.  *Id*. ¶ 14; ECF Nos. 83, 85, 87, 89 (Stipulations).  The parties spent the next several months diligently negotiating the terms of the settlement agreement and accompanying notice documents.  Miazad Decl. ¶ 15.  The parties' settlement of the award of attorneys' fees and costs was negotiated separately from, and subsequent to, negotiating relief for the Class, and will not be paid out of the relief available to the Class.  *Id.* ¶ 16.

To effectuate the Settlement, Class Counsel obtained bids from several settlement administrators before selecting Rust Consulting, Inc. ("Rust").  *Id.* ¶ 17.  Class Counsel also drafted and filed the preliminary approval brief, and finalized the accompanying notice documents: notices (mail, email, and text), claim forms and instructions, reminder, and official documentation request.  ECF. No 93.  Class Counsel further filed a supplemental brief in support of preliminary approval to amend the proposed notice and claim forms, adding language directing recipients to Spanish language resources that are available through the Settlement Administrator. ECF. Nos. 96-97.  Following the preliminary approval hearing and the Court's grant of preliminary approval, on December 15, 2022, Class Counsel further amended the notice to reflect that individuals wishing to opt out of the Settlement will not be required to submit documentation

1  reflecting their immigration status, and to provide additional information regarding the settlement

2  approval process as directed by the Court.  ECF Nos. 100-101.

3  **B.    Settlement Overview**

4  **1.    Programmatic Relief**

5  The most significant aspect of the Settlement which Plaintiffs were not able to achieve

6  except for filing this lawsuit is that, subject to its lending requirements, SoFi agrees to modify its

7  lending criteria to make DACA recipients and Conditional Permanent Residents ("CPRs")

8  eligible for Loans on the same terms as U.S. citizens and Lawful Permanent Residents ("LPRs"),

9  (the "Programmatic Relief").   ECF No. 93-3, Settlement Agreement ("SA") § 3.2.  By removing

10  additional lending requirements and eligibility bars, this policy change eliminates the precise

11  discriminatory harm that Plaintiffs challenged through this suit, and restores Plaintiffs and Class

12  Members to equal footing with U.S. citizen and LPR applicants.  As a major lender, particularly

13  with respect to student loans and loan refinancing, Plaintiffs hope and expect that SoFi's decision

14  to open its suite of consumer lending products to DACA recipients and CPRs will have a positive

15  impact on the consumer lending industry at large.

16  **2.    Monetary Relief**

17  In addition to Programmatic Relief, SoFi has agreed to create a $155,000 Settlement Fund

18  that will cover: pro rata payments to (a) Verified Claims for each California and National Class

19  Member; (b) Incentive Awards of up to $5,000 each for Plaintiffs Segarceanu, Galicia and

20  Jimenez; and (c) an Individual Payment of up to $5,540 for Plaintiff Juarez. SA §§ 3.3.5, 15.2.

21  As discussed in Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Service Awards at

22  21-24, ECF No. 106, the Settlement Agreement provides for an individual payment in the amount

23  of $5,540[3] to Plaintiff Juarez, which is the same amount as the National Class Representative,

24  because he will not benefit from the class settlement as his claim falls outside of the class

25  ───────────────

26  [3]     Plaintiffs previously requested an Individual Payment to Individual Plaintiff Ruben Juarez
of $6,000 which comprises of a $5,000 service award and the $1,000 payment equivalent to the
27  settlement share available to National Class Members).  *See* ECF No. 106.  Because National
Class Members' pro rata share per Verified Claim is estimated to be $540, Plaintiff Juarez now
28  adjusts his requested Individual Payment to $5,540.

3

definition due to the fact that he attempted to apply for loans over the phone before SoFi created a designated customer service line for DACA recipient and other non-permanent residents in December 2019.  Nonetheless, he agreed and supported the settlement because he believes it is in the best interest on the Class.  ECF No. 106-4 (Juarez Decl.) ¶ 5.  In addition to the $155,000 Settlement Fund, SoFi has further agreed to pay up to $300,000 in Class Counsel's attorneys' fees and expenses, and up to $25,000 in settlement administration costs. SA §§ 3.3, 15.1.

The plan of allocation fairly and adequately compensates Class Members.  For purposes of Rust's preliminary calculation of Class Members' settlement share, Rust assumed that 11 claims submitted without a W-9 will cure the deficiency, so the calculation assumes 46 claims from California Class Members and 111 claims from National Class Members.  Rust Decl. ¶ 20.  Rust estimates that California Class Members are eligible to receive up to $1,620 per claim.  *Id.* National Class Members are eligible to receive up to $540 per claim reflecting their potential entitlement to compensatory or nominal damages available under Section 1981.  *Id.*  These payments are calculated as a pro rata share of the Settlement, with each California Class Member receiving three times the pro rata share of each National Class Member for each Verified Claim. *Id.*  The highest award for Class Members is approximately $4,860 and the lowest award is approximately $540.  *Id.*  The average award for Class Members is approximately $1,102.13.  *Id.*

### 3.    The Settlement Classes

For settlement purposes only and consistent with the parties' Settlement Agreement, Plaintiffs seek final certification of a National Class and a California Class.  The two classes are defined as follows:

"**National Class**" means those individuals who:
- (i) applied for or attempted to apply for any credit product from SoFi; (ii) between December 19, 2019 through the date of preliminary approval; (iii) who held valid and unexpired DACA or CPR status at the time they applied for or attempted to apply for credit; (iv) who called SoFi at the designated 877 number regarding the application as set forth in the class data produced by SoFi; (v) who were denied as set forth in the class data produced by SoFi; and (vi) who were not California residents as indicated in the "applied state" data field as set forth in the class data produced by SoFi; or

- (i) applied for or attempted to apply for any credit product from SoFi; (ii) between May 19, 2017  through the date of preliminary approval; (iii) who held valid and unexpired

DACA or CPR status at the time they applied for or attempted to apply for credit; (iv) who opted out of SoFi's arbitration provision in writing; (v) who were denied as set forth in the class data produced by SoFi; and (vii) who were not California residents as set forth in the class data produced by SoFi.  SA § 1.9.1.

"**California Class**" means those individuals who:

- (i) applied for or attempted to apply for a credit product from SoFi; (ii) between December 19, 2019 through the date of preliminary approval; (iii) who held valid and unexpired DACA or CPR status at the time they applied for or attempted to apply for credit; (iv) who called SoFi at the designated 877 number regarding the application as set forth in the class data produced by SoFi; (v) who were denied as set forth in the class data produced by SoFi; and (vi) who were California residents as indicated in the "applied state" data field as set forth in the class data produced by SoFi; or

- (i) applied for or attempted to apply for a credit product from SoFi; (ii) between May 19, 2017 through the date of preliminary approval; (iii) who held valid and unexpired DACA or CPR status at the time they applied for or attempted to apply for credit; (iv) who opted out of SoFi's arbitration provision in writing; (v) who were denied as set forth in the class data produced by SoFi; and (vii) who were California residents as set forth in the class data produced by SoFi.  SA § 1.9.2.

As described in detail in Plaintiffs' Motion for Preliminary Approval, these classes are narrower than those proposed in the complaint in that they exclude applicants subject to SoFi's online arbitration agreement (i.e., those who applied on SoFi's website and did not opt out, or separately seek to apply over the phone).

It is an "unremarkable feature of class actions that class definitions are refined" over the course of litigation and settlement to "reflect the developing realities of a given suit."  *Brown v. Hain Celestial Grp., Inc.*, No. 11 Civ. 03082, 2014 U.S. Dist. LEXIS 162038, at *17 (N.D. Cal. Nov. 18, 2014).  This makes sense because plaintiffs typically craft their proposed class definition at the outset of litigation, before the contours of the claims and defenses have been refined by discovery and motion practice.  Ninth Circuit courts thus "regularly allow class definitions to be adjusted over the course of a lawsuit," including at the settlement stage.  *Id.* at *17-18 (noting that "[c]lass definitions are often revised, for example, to reflect the contours of a settlement").

As a result, class definitions may be properly narrowed to exclude individuals subject to a unique defense or limitation, both before and at the settlement stage.  *See, e.g.*, *Yanez v. HL Welding, Inc.*, No. 20 Civ. 1789, 2021 U.S. Dist. LEXIS 135234, at *7-8, *32 (S.D. Cal. July 20, 2021) (preliminarily approving settlement classes that differed from those in the complaint by

1    excluding employees who signed arbitration agreements); *Wallace v. Countrywide Home Loans,*

2    *Inc.*, No. 08 Civ. 1463, 2014 U.S. Dist. LEXIS 198351, at *10-11 (C.D. Cal. July 2, 2014)

3    (preliminarily approving class definition excluding individuals who had released their claims in a

4    related settlement, and finding that this narrowed definition "would in fact enhance the

5    predominance of common questions by removing those Class members who cannot pursue claims

6    in this action"); *Zamora v. Ryder Integrated Logistics, Inc.*, No. 13 Civ. 2679, 2014 U.S. Dist.

7    LEXIS 184096, at *12, *34 (S.D. Cal. Dec. 23, 2014) (finally approving settlement where

8    proposed class definition was "significantly more limited to the class identified in the original

9    complaint," in part by excluding individuals bound by a different settlement); *Brown*, 2014 U.S.

10   Dist. LEXIS 162038, at *19-20, *62-63 (certifying consumer class over objections where

11   narrowed definitions appropriately excluded buyers of non-actionable products).

12         Here, the proposed settlement classes appropriately exclude individuals who are subject to

13   SoFi's arbitration agreement.  The parties negotiated extensively over the class definition and

14   notice process, and ultimately determined that SoFi's customer service line records provide a

15   reasonable proxy for identifying class members who were not bound by arbitration (by virtue of

16   having sought to apply over the phone).  Miazad Decl. ¶ 18.  Based on Class Counsel's

17   experience in related immigration-based discrimination cases, publication notice has not been an

18   effective mechanism in identifying eligible class members.  *Id.* ¶ 19.  Further, the Settlement

19   Administrator's public case website appears in the top 5 Google searches for "SoFi DACA

20   lawsuit" and provides Class Counsel's contact information and key documents, and as of April

21   24, 2023 there were 4,874 unique visitors to the website.  *Id.* ¶ 20; Rust Decl. ¶ 14.  To date, no

22   individuals have voiced concerns that they were excluded from the Class after having been denied

23   SoFi loans based on a non-arbitrable application.  Miazad Decl. ¶ 21.  Further, to the extent that

24   there are such individuals, Plaintiffs have ensured through the Settlement that they will not release

25   any claims.  *See Yanez*, 2021 U.S. Dist. LEXIS 135234, at *8 (approving revised class definition

26   excluding individuals subject to arbitration in part because any such individual "retains his/her

27   right to bring an individual arbitration" for the claims asserted).  Nevertheless, they will benefit

28

Case No. 4:20-cv-03386 (HSG)        PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
                                    CLASS ACTION SETTLEMENT

1  equally from the Settlement's critical programmatic relief, and like Class Members, may now be

2  considered for SoFi loans on the same terms and conditions as U.S. citizens.

3        **C.**    **Notice and Claims Process**

4        The parties have followed Court-approved notice plan, as set forth in the Settlement

5  Agreement, the amendments to the Settlement Agreement, and the Court's Preliminary Approval

6  Order. SA §§ 2.5, 5, 7; ECF Nos. 96-97; ECF No. 100-101.

7        Following preliminary approval, in January 2023, SoFi sent Rust the Notice List, which

8  contained postal addresses and other information for 2,263 individuals identified as potential

9  Class Members. Rust Decl. ¶ 6. The Notice List is overinclusive in that it contains information

10  for all individuals who called SoFi's designated customer service line, including those who are

11  neither DACA recipients nor CPRs, or who do not otherwise meet the Class definition. Miazad

12  Decl. ¶ 22.

13        Prior to mailing the Notice and Claim Form, Rust verified potential Class Members'

14  address information through the National Change of Address database ("NCOA"). Rust Decl. ¶

15  7. By January 30, 2023, Rust sent notice to 2,188 potential Class Members: 1,495 Notice and

16  Claim Forms via First-Class Mail, 1,524 Notice and Claim Forms by email, and 2,175 text

17  messages advising potential Class Members of the Notice and Claim Form. *Id.* ¶ 8. Consistent

18  with modern best practices, Rust maintained a dual-language (English-Spanish) website

19  providing the Notice, Claim Form, information about deadlines and other relevant dates, key

20  pleadings and orders and Class Counsel's contact information. *Id.* ¶¶ 4, 13. As of April 24,

21  2023 there have been 4,874 unique visitors to the settlement website, over twice the number of

22  individuals on the Notice List (2,263). *Id.* ¶¶ 8, 14. Rust also created a dual-language (English-

23  Spanish) toll-free phone number to field questions from Class Members. *Id.* ¶ 4.

24        Following mail delivery, 184 Notice and Claim Forms were returned as undeliverable.

25  Rust Decl. ¶ 10. Rust was able to perform tracing for 157 of these addresses, resulting in 119

26  with valid forwarding addresses. *Id.* Rust then re-mailed the Notice and Claim Forms to these

27  119 addresses, with 8 being returned as undeliverable. *Id.* However, these 8 potential Class

28  Members who did not receive mail notice otherwise received notice by email or text. *Id.* Of the

2,175 individuals who were sent text notice, 120 did not receive the notice because it was undeliverable, and there was no mailing address or email address available for these individuals. *Id.* ¶ 8.  The Notice List also included 75 individuals for whom no phone number, email, or mailing address was provided, so these individuals did not receive Notice.  Rust Decl. ¶ 8.  On February 17, 2023, Rust sent 1,457 Reminder Notices by email, and 2,125 Reminder Text Messages to potential Class Members that had not yet submitted a Claim Form and W-9.  *Id.* ¶ 17.  Over 91% of potential Class Members received Notice by mail, email, or text.

Potential Class Members were able to submit the Claim Form by mail, email, and through the settlement website. SA § 5.2.  The deadline to postmark or submit a Claim Form was March 21, 2023.  Rust Decl. ¶ 18.  As of April 24, 2023, Rust has received 144 Verified Claims  (41 Verified California Class Claims and 103 Verified National Class Claims Class) from 111 Class Members.  *Id.*  Rust has received an additional 17 Claim Forms deemed deficient for failing to provide required information.  *Id.*  Potential Class Members who submitted deficient Claim Forms were sent a cure letter providing them instructions to cure the deficiency, and the postmark deadline to respond to the cure letter is April 19, 2023.  *Id.* ¶ 19.  Given the postmarked date, Rust may receive timely cure responses up to two weeks past the April 19, 2023 deadline and Class Counsel will provide an update to the Court at the May 11, 2023 Fairness Hearing if there are any additional Verified Claims.  *Id.*

The deadline for Class Members to object to or opt out of the Settlement was March 6, 2023.  Rust Decl., ¶¶ 15-16; see also Rust Decl. Exs. B-C (Notice).  No Class Members have submitted an objection or opted out of the Settlement.  Rust Decl. ¶¶ 15-16.

### D.    CAFA Notice Requirements Were Satisfied.

In compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, Rust served CAFA notices on the relevant federal and state attorneys generals on April 29, 2022. Rust Decl. ¶ 5.  The Fairness Hearing, set for May 11, 2023 is being held more than 90 days after the issuance of the CAFA notice, such that the final approval order may be entered in accordance with CAFA's notice requirements if the Court finds that all other requirements are met.  28 U.S.C. § 1715(d).

III.    ARGUMENT

A.    The Best Practicable Notice of Settlement Has Been Provided to the Class.

The notice here was the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and was provided "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation and quotation marks omitted). Notice mailed to each class member "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "'[T]he rule does not insist on actual notice to all class members in all cases' and 'recognizes it might be *impossible* to identify some class members for purposes of actual notice.'" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015)). For any class certified under Rule 23(b)(3), the notice must inform class members "that the court will exclude from the class any member who requests exclusion," stating "the time and manner for requesting exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi).

As described above, the mailing and emailing of Notices to Class Members and the administration of the notice process ensured that the best notice practicable was provided to Class Members. Although the Notice List was overinclusive (because SoFi's call records do not reflect citizenship or immigration status), courts widely recognize that notice mailed to "a broader group than the class definition" meets the definition of the best notice practicable under the circumstances "as long as there is some link or connection between the method of class notice and the class definition." *Victorino v. FCA US LLC*, No. 16 Civ. 1617, 2020 U.S. Dist. LEXIS 155991, at *5-6 (S.D. Cal. Aug. 27, 2020) (collecting cases). Here, the Notice List was generated based on records from SoFi's dedicated customer service line for non-citizen applicants. *See* Miazad Decl. ¶ 23. In accordance with the Northern District's Procedural Guidance for Class Action Settlements, the Notice was easily understandable, and included Class Counsel's contact information, the address for the settlement administration website, and instructions on how to

1    access the case docket.  *See* Rust Decl., Exs. B-D (Notice).

2          The parties and the Settlement Administrator have complied with the Court-approved

3    notice plan, as set forth in the Settlement Agreement, the amendments to the Settlement, and the

4    Court's Preliminary Approval Order.  SA §§ 2.5, 5, 7; ECF Nos. 96-97; ECF No. 100-101.

5    Because Class Members have been given a full and fair opportunity to consider the terms of the

6    proposed settlement and make an informed decision on whether to participate, the Court should

7    find that the notice was adequate and the best practicable.  *See Ford v. CEC Entm't Inc.*, No. 14

8    Civ. 677, 2015 U.S. Dist. LEXIS 191966, at *7-8 (S.D. Cal. Dec. 14, 2015) (finding notice

9    standards satisfied when claims administrator provided notice in accordance with the procedures

10   previously approved by the court in its preliminary approval order).

11         **B.      Final Certification of the Rule 23 Classes is Proper.**

12         At the preliminary approval stage, the Court conditionally certified the California Class

13   and the National Class under Rule 23(a) and 23(b)(3).  ECF No. 101 at 5-6.  The Court also

14   conditionally appointed Plaintiffs Segarceanu, Galicia, and Jimenez as Class Representatives, and

15   conditionally appointed Plaintiffs' counsel, Outten & Golden LLP and Lawyers for Civil Rights, as

16   Class Counsel.  *Id.* at 6-7.

17         For the reasons outlined in Plaintiffs' Motion for Preliminary Approval, and the Court's

18   Preliminary Approval Order, the Class, Class Representatives and Class Counsel readily satisfy

19   Rule 23's requirements for settlement purposes.  ECF No. 93 at 15-24; ECF No. 101 at 5-7.  The

20   Court's preliminary certification decisions should now be confirmed as final.

21         **C.      Final Approval of the Class Action Settlement Should Be Granted Because
22                   the Settlement Is Fair, Adequate, and Reasonable and Appropriate under
                     Rule 23.**

23         The touchstone for the final approval inquiry is whether the settlement is "fair, adequate

24   and reasonable," recognizing that "it is the settlement taken as a whole, rather than the individual

25   component parts, that must be examined for overall fairness."  *Staton v. Boeing Co.*, 327 F.3d

26   938, 952, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.

27   1998) (internal quotation marks and alterations omitted)).  Pursuant to Rule 23(e)(2), a court must

28   consider whether "(A) the class representatives and class counsel have adequately represented the

1    class; (B) the proposal was negotiated at arms' length; (C) the relief provided for the class is

2    adequate . . . [and] (D) the proposal treats class members equitably to each other." In analyzing

3    whether class relief is adequate, the court must consider the costs, risks, and delay of trial and

4    appeal; the method of processing class member claims and distributing relief; the terms of any

5    attorneys' fee awards; and any agreement made in connection with the settlement proposal. Fed.

6    R. Civ. P. 23(e)(2)(C)(i)-(iv); 23(e)(3).

7        This standard overlaps with the instruction of *Hanlon* to balance the following factors in

8    assessing a proposed class action settlement:

9        [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely
     duration of further litigation; [3] the risk of maintaining class action status
10       throughout the trial; [4] the amount offered in settlement; [5] the extent of
     discovery completed and the stage of the proceedings; [6] the experience and
11       views of counsel; [7] the presence of a governmental participant; and [8] the
     reaction of the class members to the proposed settlement.
12

13   *Hanlon*, 150 F.3d at 1026; *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th

14   Cir. 2009) (same). The inquiry required upon settlement is heightened where a case is

15   settled prior to formal class certification. *See Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035,

16   1048 (9th Cir. 2019). Here, a rigorous review of the Settlement confirms that it merits final

17   approval, as evidenced by a consideration of the factors set forth in *Hanlon*.

18       **1.    Plaintiffs' Case Faced Significant Hurdles on Liability and Class
19              Certification.**

20       "Approval of a class settlement is appropriate when 'there are significant barriers

21   plaintiffs must overcome in making their case.'" *Betancourt v. Advantage Human Resourcing,*

22   *Inc.*, No. 14 Civ. 01788, 2016 U.S. Dist. LEXIS 10361, at *9 (N.D. Cal. Jan. 28, 2016) (quoting

23   *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851) (N.D. Cal. 2010)). Plaintiffs face

24   substantial obstacles to full recovery. First, liability is far from guaranteed. This litigation—a

25   lending discrimination class action on behalf of DACA recipients and CPRs—presents a

26   relatively novel theory with numerous unsettled issues. For example, SoFi has vigorously

27   contended that its policies are lawful and justified based on heightened risks inherent in lending

28   to individuals with non-permanent immigration status. SoFi has also argued that the Equal

1  Credit Opportunity Act provides that permanence of residency and immigration status are

2  legitimate considerations in assessing credit and repayment risk.  SoFi may also highlight events

3  in Plaintiffs' credit history to show that they were not qualified for the credit products they

4  sought, regardless of their immigration status.

5       Plaintiffs further face obstacles to obtaining class certification.  For example, Plaintiffs

6  would face challenges to certifying a FCRA class, as those claims are predicated on SoFi's

7  knowledge of applicants' CPR status based on the electronic submission of conditional green

8  cards during the online application process.  Because online applicants were required to agree to

9  SoFi's arbitration agreement, and because very few online applicants opted out of arbitration in

10  writing, there will likely be few, if any, members of a FCRA class apart from Plaintiff

11  Segarceanu.  SoFi may also argue that Class Members' claims cannot be tried collectively due to

12  individualized differences in their applications and credit histories, thereby preventing a finding

13  of predominance.

14            **2.       The Settlement Amount Is Appropriate.**

15       "[P]erhaps the most important factor" courts consider in determining whether to grant

16  preliminary approval is "plaintiffs' expected recovery balanced against the value of the settlement

17  offer."  *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation marks

18  omitted).  Here, the monetary and programmatic relief provide excellent value for Class

19  Members.  Though the precise amount of the monetary awards per Class Member is not yet

20  known, under any scenario the monetary relief under the settlement is likely to be a high

21  percentage of their maximum damages.

22       California Class Members are eligible for individual payments of up to $1,620 per denial

23  of a credit application, which amounts to approximately 40% of the $4,000 statutory damages

24  available under the Unruh Act for each discriminatory act.  Rust Decl. ¶ 20; Cal. Civil Code §

25  52(a).  This is an excellent result for California Class Members.[4]  In light of the risks of an

26

27  ────────────────

[4]       *See, e.g.*, *Betancourt*, No. 14 Civ. 1788, 2016 U.S. Dist. LEXIS 10361, at *13-14, *28

28  (N.D. Cal. Jan 28, 2016) (granting final approval of settlement providing approximately 9.7% of
total maximum potential recovery if class members had prevailed on all claims); *Stovall-Gusman*

1  adverse judgment on the merits, class certification or appeal, even lesser payments would provide

2  an excellent value to California Class Members.

3       National Class Members are eligible for individual awards of up to $540 per denial of a

4  credit application, which constitutes an excellent recovery considering the challenges inherent in

5  establishing Section 1981 liability class-wide, and in certifying a FCRA class (as described above

6  in Section III(C)(1).  *See* Rust Decl. ¶ 20.  In particular, Class Members will face significant

7  challenges in establishing compensatory damages resulting from SoFi's denial of their loan

8  applications.  Again, given the risks on class certification and the merits, even lower payments

9  would constitute an excellent recovery for National Class Members.

10       Plaintiffs also obtained the *maximum* degree of Programmatic Relief that Class Members

11  could possibly obtain (SoFi's agreement to abandon the exclusionary lending policies that

12  Plaintiffs sought to challenge through this litigation).  SoFi has agreed to extend its loans to

13  current and valid DACA recipients and CPRs on the same terms and conditions as U.S. citizens

14  and LPRs.  All DACA recipients and CPRs nationwide—not just Class Members—will benefit

15  from this Programmatic Relief, enabling hundreds of thousands of individuals to obtain credit

16  under SoFi's comparatively advantageous rates.  Thus, the Programmatic Relief achieved here

17  provides a significant benefit to Class Members (and DACA recipients and CPRs nationwide) and

18  does so immediately, without the delay and uncertainty of protracted litigation, trial and possible

19  appeal.

20            **3.**       **The Extent of Discovery Supports Settlement.**

21       A settlement requires adequate discovery.  The touchstone of the analysis is whether "the

22  parties have sufficient information to make an informed decision about settlement," including

23  formal and informal discovery.  *Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d

24  454, 459 (9th Cir. 2000) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.

25

26  *v. W.W. Granger, Inc.*, No. 13 Civ. 2540, U.S. Dist. LEXIS 78671, at *12, *14 (N.D. Cal. June

27  17, 2015) (finding that a settlement constituting 7.3% of plaintiff's estimated trial award to be "within the range of reasonableness); *In re Heritage Bond Litig.*, No. 02 ML 1475, 2005 U.S.

28  Dist. LEXIS 13555, at *62 (C.D. Cal. June 10, 2005) (calling a recovery of 36% of the total net loss an "exceptional result").

13

1998)).  Here, Plaintiffs have litigated these claims zealously for two years, conducting both formal and informal discovery along the way.  Miazad Decl. ¶ 24.  Specifically, SoFi produced relevant policies and procedures, underwriting materials, application materials and applicant data, as well as records from its customer service phone number dedicated to serving DACA recipients and other non-citizens.  *Id.*  Plaintiffs produced their online application materials, screen shots of online accounts, credit reports, emails with SoFi personnel, and evidence of phone calls with SoFi's customer service department, and also participated in numerous intakes, interviews and discussions with Class Counsel regarding their claims.  *Id.* ¶ 25.  Thus, the settlement results from Class Counsel's informed judgment about the strengths and weaknesses of the claims.

### 4.    Counsel's Experience and Views Support Approval.

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)).  "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]"  *Rodriguez*, 563 F.3d at 967.  Class Counsel are some of the most experienced class action litigators in the country.  *See* Miazad Decl. ¶¶ 4-9; ECF No. 106-3 (Hall Decl. ISO Fees) ¶¶ 6-7.  Class Counsel specialize in prosecuting complex employment and civil rights class actions, and over many years have successfully—and unsuccessfully—litigated many such cases, putting them in a strong position to weigh the strengths and weaknesses of Plaintiffs' claims and SoFi's defenses. *Id.; see also* ECF No. 93-2 (Miazad Decl. ISO PA), Ex. B (listing comparable past distributions).  Based on their extensive experience, Class Counsel believe that the settlement is fair, reasonable, and adequate.

### 5.    Class Members Have Reacted Positively to the Settlement.

Class Members in this case have reacted very positively to the Settlement.  While the precise number of Class Members is unknown, Plaintiffs' applied assumptions lead to an estimate of the Class as anywhere between 460 (60 California Class Members and 400 National Class Members) and 690 (90 California Class Members and 600 National Class Members) individuals.

14

1   ECF No. 99 (Supplemental Miazad Decl.) ¶ 8.  To date, 111 Class Members submitted Verified

2   Claims, Rust Decl. ¶ 18, which is approximately 16% to 24% of the estimated Class size range.

3   This return rate falls within the 10% to 30% Claim Form return rate that Plaintiffs estimated.  *See*

4   ECF No. 99 ¶ 8.  At the time of this filing, 17 Claim Forms are considered deficient due to a

5   missing W-9 or other issue regarding the claimant's authority to submit a Claim.  Rust Decl. ¶ 19.

6   Rust may receive timely responses to cure the deficiency after the filing of this Motion, and the

7   number of Verified Claims may increase by the Fairness Hearing.  *Id.*

8       No Class Members have opted out of the Settlement, and none have objected to any part

9   of the settlement, including the overall monetary relief achieved and the amounts allocated to

10  attorneys' fees, costs, and Plaintiffs' service awards.  *Id.* ¶¶ 15-17.  The lack of objections and opt

11  outs is a strong positive reaction, favoring a finding that the settlement is fair and should be

12  finally approved.  *See DIRECTV, Inc.*, 221 F.R.D. at 529 ("It is established that the absence of a

13  large number of objections to a proposed class action settlement raises a strong presumption that

14  the terms of a proposed class settlement action are favorable to the class members."); *Munoz v.*

15  *BCI Coca-Cola Bottling Co. of Los Angeles*, 112 Cal. Rptr. 3d 324, 333-35 (Cal. Ct. App. 2010)

16  (affirming final approval and finding reaction to class favorable even where there were two opt-

17  outs and one objection).

18          **6.    The Requirements for Approval under Rule 23(e)(2) Are Met.**

19      As noted above, Rule 23(e)(2) specifies several requirements for approval of a class action

20  settlement.  Each of these requirements is met here.  First, Class Representatives and Class

21  Counsel must have adequately represented the Class.  Fed. R. Civ. P. 23(e)(2)(A).  As set forth in

22  greater detail in the Preliminary Approval and Fee Motions, this requirement has been met.  *See*

23  ECF No. 93, 106.  Class Representatives have the same interests as other Class Members, and

24  have devoted dozens of hours advocating on the Class's behalf.  *See* ECF No. 106 at 6-8, 21-25.

25  And, as noted above, Class Counsel are highly experienced and well-regarded in the field of class

26  action civil rights litigation.  *See* Miazad Decl. ¶¶ 4-9; ECF No. 106-3 (Hall Decl. ISO Fees) ¶¶ 5-

27  7; *see also Gonzalez v. Pritzker*, No. 10 Civ. 3105, 2016 U.S. Dist. LEXIS 131277, at *11

28  (S.D.N.Y. Sept. 20, 2016) (noting that Outten & Golden are "nationally recognized employment

1    class action litigators" in a Title VII disparate impact case); *Mills v. Capital One, N.A.*, No. 14

2    Civ. 1937, 2015 U.S. Dist. LEXIS 133530, at *32 (S.D.N.Y. Sept. 30, 2015) (noting Outten &

3    Golden's "excellent and well-deserved reputation"); see ECF No. 106-3 (Hall Decl. ISO Fees) ¶¶

4    6-7.

5         Second, the Settlement was negotiated at arms' length. Fed. R. Civ. P. 23(e)(2)(B). A

6    settlement reached "in good faith after a well-informed arms-length negotiation" is presumed to

7    be fair. *Fernandez v. Victoria Secret Stores, LLC*, No. 06 Civ. 04149, 2008 U.S. Dist. LEXIS

8    123546, at *15 (C.D. Cal. July 21, 2008).[5] Here, the Settlement easily meets the rigorous scrutiny

9    required in this District and by *Roes, 1–2*, for both substantive and procedural reasons. First, the

10   Settlement is substantively strong, providing excellent monetary relief and robust programmatic

11   relief. Second, the Settlement is procedurally sound, (a) having been reached after extensive,

12   hard-fought adversarial litigation, with substantial discovery and motion practice, (b) with no

13   parallel litigation that could give rise to reverse auction concerns, and (c) after a full-day

14   mediation session, overseen by a highly experienced mediator with particular expertise in

15   complex class actions, and followed by months of further negotiations between the parties.

16   Miazad Decl. ¶ 11. This is precisely the type of "an arms-length, non-collusive, negotiated

17   resolution" in which Ninth Circuit courts place "a good deal of stock." *Rodriguez*, 563 F.3d at

18   965; *see also Bert v. AK Steel Corp.*, No. 12 Civ. 467, 2008 U.S. Dist. LEXIS 111711, at *6-

19   7 (S.D. Ohio Oct. 23, 2008) ("[P]articipation of an independent mediator in settlement

20   negotiations virtually ensures that the negotiations were conducted at arm's length and without

21   collusion between the parties"). Further, as discussed in Plaintiffs' Motion for Approval of

22   Attorneys' Fees, Costs, and Service Awards, none of the *In re Bluetooth Headset Prods. Liab.*

23   *Litig.*, 654 F.3d 935 (9th Cir. 2011) factors suggest collusion here. *See* ECF No. 106 at 17-19.

24

25

26   [5]    *See also Hanlon*, 150 F.3d at 1027 (affirming trial court's approval of class action

27   settlement where parties reached agreement after several months of negotiation and the record
     contained no evidence of collusion); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal.

28   2013) (private mediation "support[s] the conclusion that the settlement process was not
     collusive").

Case No. 4:20-cv-03386 (HSG)    PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
                                        CLASS ACTION SETTLEMENT

1        <u>Third</u>, as discussed in greater detail above, the relief provided by the Settlement is

2    adequate, particularly considering the relatively novel nature of Plaintiffs' claims.  Fed. R. Civ. P.

3    23(e)(2)(C).  Settlement checks will be distributed to Class Members who submitted valid Claim

4    Forms within 30 days of the Effective Date once their claims are verified pursuant to the

5    procedures set forth in the Settlement Agreement, and Class Members will have 120 days from

6    the date of issuance to cash their checks.  SA § 5.2.4.  Attorneys' fees, as awarded by the Court,

7    will be paid within 14 days after the Effective Date to the Settlement Administrator, to be

8    distributed pursuant to Class Counsel in accordance with the Settlement Agreement.  *Id*. § 15.1.4

9        <u>Fourth</u>, the Settlement treats similarly-situated Class Members the same.  All California

10    Class Members who submit Verified Claim Forms will receive awards in the amount of

11    approximately $1,620 for each denied loan application.  Rust Decl. ¶ 20; *see also* SA § 3.3.5.  All

12    National Class Members who submit Verified Claim Forms will receive awards in the amount of

13    approximately $540 for each denied application.  Rust Decl. ¶ 20; *see also* SA § 3.3.5.  As

14    described above, *supra* § III(C)(2), the difference in award amounts for the different Classes is

15    justified by the difference in possible financial recovery for claims brought under the Unruh Act

16    and claims brought under Section 1981.

17    **IV.    CONCLUSION**

18        For the foregoing reasons, and the reasons set forth in Plaintiffs' Preliminary Approval

19    Motion and Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Service Awards,

20    Plaintiffs respectfully request that the Court grant Final Approval of the Settlement, grant final

21    certification of the Class, designate Plaintiffs Segarceanu, Galicia, and Jimenez as Class

22    Representatives, and confirm Outten & Golden LLP and Lawyers for Civil Rights as Class

23    Counsel.

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated: April 27, 2023

By: /s/ *Ossai Miazad*
          Ossai Miazad

Ossai Miazad (*pro hac vice*)
OUTTEN & GOLDEN LLP
1225 New York Ave NW, Suite 1200B
Washington, D.C. 20005
Telephone: (202) 914-5097
Facsimile: (202) 847-4410
om@outtengolden.com

Moira Heiges-Goepfert (SBN 326861)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 991-8514
Facsimile: (415) 638-8810
mhg@outtengolden.com

Sophia L. Hall (*pro hac vice*)
LAWYERS FOR CIVIL RIGHTS
61 Batterymarch Street, 5th Floor
Boston, MA 02110
Telephone: (617) 482-1145
Facsimile: (617) 482-4392
shall@lawyersforcivilrights.org

*Attorneys for Plaintiffs and the Class*

18