UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN JUAREZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SOCIAL FINANCE, INC., et al., <br><br> Defendants. | Case No. 20-cv-03386-HSG <br><br> **ORDER GRANTING MOTION FOR FINAL APPROVAL AND GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES** <br><br> Re: Dkt. Nos. 106, 109 |

Pending before the Court are Plaintiffs' motions for final approval of class action settlement and for attorneys' fees, costs, and service awards. Dkt. Nos. 106, 109. The Court held a final fairness hearing on May 11, 2023. For the reasons detailed below, the Court **GRANTS** final approval. The Court also **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for attorneys' fees, costs, and service awards.

### I. BACKGROUND

#### A. Factual Background

Plaintiffs Ruben Juarez, Calin Constantin Segarceanu, Emiliano Galicia, and Josue Jimenez allege that Defendants Social Finance, Inc. d/b/a SoFi and SoFi Lending Corp. d/b/a SoFi (collectively, "SoFi") engaged in lending discrimination. Plaintiffs applied for loans, but allege that SoFi denied their applications because they were not U.S. citizens or lawful permanent residents ("LPRs"). *See* Dkt. No. 62 ("SAC") at ¶¶ 120–124. Rather, Plaintiffs had either Deferred Action for Childhood Arrivals ("DACA") status or temporary green cards as conditional permanent residents ("CPRs").[1] In May 2020, Plaintiffs brought a class action lawsuit against

---

[1] DACA is a form of deferred action against removal, a discretionary grant of authorized stay by the federal government. *See* SAC at ¶¶ 4, 34–42.

SoFi, alleging lending discrimination based on alienage and immigration status in violation of federal and California state law. In early December 2019, after discussions with Plaintiffs' counsel in this case, SoFi changed its policy to make DACA recipients eligible for loans, but only if they applied by telephone with a co-signer who is a U.S. citizen or LPR—two requirements that are not imposed on citizen applicants. *Id.* at ¶ 5. At the same time, SoFi also created a designated customer service number to field calls and initiate applications from DACA recipients and other non-citizens seeking loans (the "877 number"). *See* Dkt. No. 93-2 at ¶ 11.

### B. Procedural History

The parties engaged in an all-day mediation session with JAMS arbitrator David Geronemus, and reached a settlement of this putative class action. *See* Dkt. No. 93-3, Ex. A ("SA"). Plaintiffs filed a motion for preliminary approval in April 2022, Dkt. No. 93, and after supplemental briefing, the Court granted the motion in December 2022, Dkt. No. 101. The parties now seek final approval of the class action settlement and Plaintiffs seek attorneys' fees, costs, and service awards for the named Plaintiffs. *See* Dkt. Nos. 106, 109.

### C. Settlement Agreement

The Court detailed the key terms of the settlement agreement in its order granting the motion for preliminary approval. *See* Dkt. No. 101 at 2–5. The following key terms are relevant to the discussion below:

<u>Class Definition</u>: The parties have proposed two Settlement Classes, which have been defined narrowly:

- "National Class" means those individuals who
    - (i) applied for or attempted to apply for any credit product from SoFi; (ii) between December 19, 2019 through the date of preliminary approval; (iii) who held valid and unexpired DACA or CPR status at the time they applied for or attempted to apply for credit; (iv) who called SoFi at the designated 877 number regarding the application as set forth in the class data produced by SoFi; (v) who were denied as set forth in the class data produced by SoFi; and (vi) who were not California residents as indicated in the "applied state" data field as set

forth in the class data produced by SoFi; or

- ○ (i) applied for or attempted to apply for any credit product from SoFi; (ii) between May 19, 2017 through the date of preliminary approval; (iii) who held valid and unexpired DACA or CPR status at the time they applied for or attempted to apply for credit; (iv) who opted out of SoFi's arbitration provision in writing; (v) who were denied as set forth in the class data produced by SoFi; and (vi) who were not California residents as set forth in the class data produced by SoFi;
- o Excluded from the National Class are SoFi, all officers, directors, and employees of SoFi, and their legal representatives, heirs, or assigns, and any Judges to whom the Action is assigned, their staffs, and their immediate families.

- "California Class" means those individuals who
  - ○ (i) applied for or attempted to apply for a credit product from SoFi; (ii) between December 19, 2019 through the date of preliminary approval; (iii) who held valid and unexpired DACA or CPR status at the time they applied for or attempted to apply for credit; (iv) who called SoFi at the designated 877 number regarding the application as set forth in the class data produced by SoFi; (v) who were denied as set forth in the class data produced by SoFi; and (vi) who were California residents as indicated in the "applied state" data field as set forth in the class data produced by SoFi; or
  - ○ (i) applied for or attempted to apply for a credit product from SoFi; (ii) between May 19, 2017 through the date of preliminary approval; (iii) who held valid and unexpired DACA or CPR status at the time they applied for or attempted to apply for credit; (iv) who opted out of SoFi's arbitration provision in writing; (v) who were denied as set forth in the class data produced by SoFi; and (vi) who were California residents as set forth in the class data produced by SoFi.
  - ○ Excluded from the California Class are SoFi, all officers, directors, and employees of SoFi, and their legal representatives, heirs, or assigns, and any Judges to whom

1  the Action is assigned, their staffs, and their immediate families. *See* SA at § 1.9.

2

3  The parties have explained that these settlement classes were designed to exclude applicants

4  subject to SoFi's arbitration agreement. *See* Dkt. No. 109 at 4–7; *see also* Dkt. 56 at 7–9 (Order

5  Denying First Motion to Compel). Because of how the classes are defined, SoFi also has actual

6  records of—and thus a possible way of identifying—potential settlement class members. *See* Dkt.

7  No. 109 at 6–7; *see also* Dkt. No. 99 at ¶¶ 4–6.

8  <u>Settlement Benefits</u>: Defendant will make a $155,000 non-reversionary payment for the

9  settlement fund. *See* SA at §§ 3.3.2, 3.3.3. It will also provide an additional $25,000 for

10 administration costs. *See id.* at § 3.3.1. Each California Class Member who submits a Verified

11 Claim shall be entitled to $3,000 (or a pro rata distribution) per denied application. *See id.* at

12 § 3.3.5. Each National Class Member who submits a Verified Claim shall be entitled to $1,000 (or

13 a pro rata distribution) per denied application. *Id.* Defendant has also agreed to amend its lending

14 policies and practices to make DACA recipients and CPRs eligible for loans on the same terms as

15 U.S. citizens and LPRs. *See id.* at § 3.2.1.

16 <u>Attorneys' Fees and Costs</u>: Class Counsel may file an application for attorneys' fees not to

17 exceed $300,000. *See* SA at § 15.1. Unlike any incentive award for Plaintiffs, Defendant will pay

18 any award of attorneys' fees and costs separately rather than from the settlement fund. *See id.*; *see*

19 *also id.* at §§ 3.3.1, 3.3.4.

20 **II.   DISCUSSION**

21       **A.   Final Settlement Approval**

22            **i.   Class Certification**

23 Final approval of a class action settlement requires, as a threshold matter, an assessment of

24 whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and

25 (b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that

26 would affect these requirements have changed since the Court preliminarily approved the class on

27 December 15, 2022, this order incorporates by reference the Court's prior analysis under Rules

28 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No. 101 at 5–6.

### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Where the parties reach a class action settlement prior to class certification, the Ninth Circuit has cautioned that such settlement agreements "'must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id*. (quotations omitted).

The Ninth Circuit has identified several "subtle signs" the Court should consider to determine whether "class counsel have allowed pursuit of their own self-interests to infect the negotiations." *Roes*, 944 F.3d at 1043. These include: (1) "when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607–08 (9th Cir. 2021) (quotation omitted).

To assess whether a proposed settlement comports with Rule 23(e), the Court may also consider some or all of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See id.* at 609. In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that

the proposed settlement is fair, adequate, and reasonable, and that class members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice plan previously approved by the Court was implemented and complied with Rule 23(c)(2)(B). *See* Dkt. No. 101 at 11–14; *see also* Dkt. No. 109-2 ("Rust Decl.") at ¶¶ 4–19. As of April, Rust Consulting had sent notice in some fashion to 2,188 of the 2,263 potential class members. *See id.* at ¶ 8. Rust sent 1,495 notices and claim forms via U.S. first class mail; 1,524 notices and claim forms by email; and 2,175 text messages advising potential class members of how to access the notice and claim form through the settlement website. *Id.* at ¶¶ 8–10, 13–14. In total, only 75 potential class members were not sent any form of notice because the data that SoFi provided did not contain a phone number, email, or physical mailing address for them.

Of the 1,495 notice and claim forms that were mailed, 184 were returned as undeliverable. *Id.* at ¶ 10. Rust Consulting identified valid forwarding addresses for 119 of these potential class members and re-mailed the notice and claim forms. *Id.* Eight were still returned as undeliverable, but these individuals also received some other form of notice. *Id.* And although 52 emails were returned as undeliverable, these individuals also received notice by mail and/or text message. *Id.* at ¶ 9. Rust Consulting also served CAFA notices on the relevant federal and state attorneys

general on April 29, 2022. *Id.* at ¶ 5.  During the final fairness hearing counsel confirmed that they had an initial phone call with some attorneys general, but did not receive any further responses from them.

In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

In deciding the motion for preliminary approval, the Court considered all three signs of collusion that the Ninth Circuit has identified. *See* Dkt. No. 101 at 8–10; *see also McKinney-Drobnis*, 16 F.4th at 607–08.  Nothing in the record changes the Court's preliminary conclusion regarding these factors.  The proposed $155,000 settlement is non-reversionary, and none of these funds will be distributed to the attorneys.  The settlement also provided significant programmatic relief since class members may now be considered for SoFi loans on the same terms and conditions as U.S. citizens.  Particularly because of the clear sailing provision regarding counsel's request for attorneys' fees, the Court still carefully scrutinizes the request for attorneys' fees and incentive awards to ensure that class members' interests are protected under the settlement.  *See* Section II.B below.  The Court finds that other factors also indicate that the proposed settlement is fair, adequate, and reasonable.

### 1. Strength of Plaintiffs' Case, Litigation Risk, and Risk of Maintaining Class Action Status

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case.  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  Difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).  "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

The Court finds that the amount offered in settlement is reasonable in light of the complexity of this litigation and the substantial risk that Plaintiffs would face in litigating the case given the nature of the asserted claims. *See* Dkt. No. 109 at 11–12. Were the case to proceed, Class Counsel has acknowledged that there are uncertainties about whether SoFi could ultimately be held liable. *See id.* Counsel acknowledges that they have advanced "a relatively novel theory with numerous unsettled issues," and SoFi has raised arguments that the Equal Credit Opportunity Act permits consideration of the permanence of residency and immigration status when assessing credit and repayment risk. *Id.* Additionally, counsel have explained that they would likely face difficulties in certifying a class due to the individualized nature of their loan applications and credit histories. *Id.* at 11. In reaching a settlement, Plaintiffs have ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors also weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement amount falls "within the range of reasonableness" in light of the risks and costs of litigation. *See* Dkt. No. 71 at 8–10; *see also Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) (citing cases).

As an initial matter, the Court notes that the non-monetary, programmatic relief in this case is substantial. *See* Dkt. No. 109 at 13. SoFi has agreed to abandon the lending policies that Plaintiffs have challenged in this case, and instead extend its loans to current and valid DACA recipients and CPRs on the same terms and conditions as U.S. citizens and LPRs. This change in policy may benefit not only class members, but all DACA recipients and CPRs nationwide. Class Counsel has described this as "the maximum degree of Programmatic Relief that Class Members could possibly obtain." *See id.*

The monetary relief that Plaintiffs obtained in this case is also significant. California Class Members are eligible under the Settlement Agreement to receive individual payments of up to

8

1  $3,000 per denial of a credit application.  And National Class Members are eligible to receive

2  individual payments of up to $1,000 per denial of a credit application.  Following class notice,

3  Rust Consulting received 147 verified claims from 113 different Class Members (44 California

4  Class Claims and 103 National Class Claims Class).  *See* Rust Decl. at ¶ 18.[2]  Based on these

5  claims, Class Counsel estimates that Class Members will receive approximately $1,620 for each

6  California claim, which amounts to approximately 40% of the $4,000 statutory damages available

7  under the Unruh Civil Rights Act, and $540 for each National claim.  *Id.* at ¶ 20; *see also* Dkt. No.

8  109 at 12–13.  The highest award for Class Members will be approximately $4,860 and the lowest

9  award will be approximately $540.  Rust Decl. at ¶ 20.  The average recovery for individual Class

10  Members will be approximately $1,102.13.  *Id.*  The Court finds that this recovery is significant,

11  especially when weighed against the litigation risks in this case.  In any event, "[i]t is well-settled

12  law that a cash settlement amounting to only a fraction of the potential recovery does not per se

13  render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City &*

14  *County of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982).  The Court finds under the circumstances that

15  this factor weighs in favor of approval.

### 3. Extent of Discovery Completed and Stage of Proceedings

17  The Court finds that Class Counsel had sufficient information to make an informed

18  decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459

19  (9th Cir. 2000).  The parties settled only after conducting significant discovery and investigation

20  into the claims over the course of several years.  *See* Dkt. No. 109 at 13–14.  Thus, the Court is

21  persuaded that Class Counsel entered the settlement discussions with a substantial understanding

22  of the factual and legal issues, so as to allow them to assess the likelihood of success on the merits.

23  This factor weighs in favor of approval.

### 4. Reaction of Class Members

25  The reaction of the Class Members also supports final approval.  "[T]he absence of a large

26  number of objections to a proposed class action settlement raises a strong presumption that the

---

[2] During the final fairness hearing, counsel provided these slightly revised figures to reflect class members who had cured deficient submissions.

terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

As of April 24, 2023, Rust Consulting had not received any objections or requests for exclusion. *See* Rust Decl. at ¶¶ 15–16. Counsel confirmed that no additional objections or requests for exclusion were received between filing the motion for final approval and the final fairness hearing. The Court finds that the lack of objections and opt-outs indicates overwhelming support among the Class Members and weighs in favor of approval of the settlement. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

\* \* \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the Class Members received adequate notice. Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**.

### B. Attorneys' Fees, Costs and Expenses, and Incentive Awards

In its unopposed motion and consistent with the Settlement Agreement, Class Counsel asks the Court to approve an award of $300,000 in attorneys' fees and costs and $25,000 in settlement administration expenses. *See* Dkt. No. 106 at 8–21. Counsel also seeks a $5,000 incentive award for each of the three class representatives, and $5,540 as an "individual payment" for Ruben Juarez. *Id.* at 21–25; *see also* Dkt. No. 109 at 3, & n.3.

#### i. Attorneys' Fees & Costs

##### a. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In non-common fund cases and those brought under fee shifting statutes, such as Section 1981 and the

10

Unruh Act, the lodestar method for awarding attorneys' fees is appropriate. *See In re Bluetooth*, 654 F.3d at 941–42. The Ninth Circuit has explained that in such cases, "the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized." *Id.* at 941. The "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Trial courts "also retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee." *Laffitte*, 1 Cal. 5th at 506. Class Counsel is also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted).

### b. Discussion

Class Counsel here seeks $300,000 in attorneys' fees and costs, which SoFi will pay separately and not out of the settlement fund. *See* Dkt. No. 106. Although the requested fees and costs are significantly more than the $155,000 that will be distributed to Class Members, Class Counsel urges that its requested fees are far below its lodestar, reflect the changes to SoFi's lending policies that counsel helped broker, and is appropriate given the work invested in this case. *Id.*

As previously discussed, the settlement provides monetary relief, and the average Class Member will recover over $1,000. *See* Rust Decl. at ¶ 20. Moreover, no one objected to the adequacy of the settlement amount. The Court finds that this alone represents a good result for Class Members. But given the nature of this case, the Court agrees with Class Counsel that "the most significant and valuable component of the settlement" is the change in SoFi's lending policies. *See* Dkt. No. 106 at 9. Because of this litigation, SoFi "has agreed to change its policies to make its consumer credit products available to DACA recipients and CPRs on the same terms and conditions as it offers credit to U.S. citizens and LPRs." *See id.* The Ninth Circuit has explained that the lodestar method for calculating attorneys' fees is appropriate in cases "where the relief sought—and obtained—is [] primarily injunctive in nature and thus not easily

United States District Court
Northern District of California

monetized . . . ." *See In re Bluetooth*, 654 F.3d at 941–42.

Class Counsel urges that their requested fees and costs are below their lodestar, and thus reasonable. *See* Dkt. 106 at 10–15. In support of the motion for attorneys' fees, Class Counsel calculated that as of January 20, 2023, it had spent 1,454.70 hours on this case, with a lodestar of $897,880.20. *See* Dkt. No. 106-1 ("Miazad Decl.") at ¶ 41. Counsel thus points out that the $300,000 in requested fees only reflects .33 times their lodestar. *See id.* at ¶ 42. In support of this calculation, counsel provided a "summary chart" of the time each attorney spent on the case. *See id.* at ¶ 41; *see also* Dkt. No. 106-2, Ex. A. But counsel did not provide any detail about or records of the actual work performed on this case. Counsel also calculated that it incurred $21,494.78 in costs for this case. *See* Dkt. No. 106-2, Ex. A. During the final fairness hearing, the Court indicated that it would need more detailed records to support the request for fees and costs, and issued an order requesting more detailed attorney billing records for in camera review. Counsel therefore provided billing records to the Court for in camera review. These records provide an updated lodestar of $957,996.21 for 1,571.60 hours of work spent on this case. Class Counsel's requested fees thus reflects .31 times their lodestar.

Having reviewed these records, the Court has some reservations about the efficiency of counsel's time incurred on this case. The size of the case team—8 attorneys and 6 support staff—appears to have led to some inefficiencies, with substantial time devoted to internal communications between team members. The records also reflect significant time for simple administrative tasks such as "saving documents" to the "case file." But even if the Court discounted counsel's time, they are still requesting far less than their modified lodestar would be after accounting for these billing discrepancies. Counsel is seeking less than a third of their lodestar. The Court accordingly finds that an award of $300,000 for attorneys' fees and costs is reasonable under the circumstances.

\*     \*     \*

The Court accordingly **GRANTS** the request for attorneys' fees and costs, and awards to Class Counsel $300,000 in attorneys' fees and costs. The Court also **GRANTS** the requested $25,000 in costs for the settlement administrator.

12

### ii. Incentive Awards

Lastly, Class Counsel requests an incentive award of $5,000 for Plaintiffs Segarceanu, Galicia and Jimenez as class representatives, and an "individual payment" of $5,540 for Plaintiff Juarez, who falls outside the class definitions under the settlement agreement. *See* Dkt. No. 106 at 21–25; Dkt. No. 109 at 3, & n.3. Because Mr. Juarez is not a class member, the Court addresses the incentive award requests for Plaintiffs Segarceanu, Galicia and Jimenez separately from the request for Mr. Juarez.

#### a. Class Representatives

District courts have discretion to award incentive fees to named class representatives. *See In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). "Service awards as high as $5,000 are presumptively reasonable in this judicial district." *See Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *12 (N.D. Cal. Apr. 19, 2021). However, the Court shares the Ninth Circuit's concern that "if class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *See Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003); *Radcliffe v. Experian Information Sols. Inc.*, 715 F.3d 1157, 1163–64 (9th Cir. 2013) (noting that the Ninth Circuit has "expressed disapproval of these incentive agreements" and that "in some cases incentive awards may be proper but . . . awarding them should not become routine practice"). The Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe*, 715 F.3d at 1165 (quotations omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.*

Class Counsel represents that Plaintiffs Segarceanu, Galicia and Jimenez closely participated in every aspect of this case. *See* Dkt. No. 106 at 22–23; *see also* Miazad Decl. at ¶¶ 29–40. They produced records related to their online applications, credit reports, emails with SoFi personnel, and evidence of phone calls with SoFi's customer service department. *See id.* They also provided sensitive information about their own immigration status. They

13

communicated frequently with counsel, and reviewed the proposed settlement. *Id.* Plaintiffs also submitted individual declarations describing the time they spent on this case. *See* Dkt. No. 112-3; Dkt. No. 112-4; Dkt. No. 112-5. Mr. Segarceanu estimates that he spent over 40 hours meeting with counsel, participating in discovery, and reviewing case documents including the settlement agreement. *See* Dkt. No. 112-3 at ¶ 8. Mr. Galicia estimates that he spent approximately 30 hours and Mr. Jimenez that he spent approximately 16 hours on these same tasks. *See* Dkt. No. 112-4 at ¶ 8; Dkt. No. 112-5 at ¶ 8. Considering all the circumstances of this case, including the reasonable proportionality between the average class members' recovery and the requested awards, the Court finds that the presumptive $5,000 service award is reasonable to compensate Plaintiffs for their efforts. The Court therefore **GRANTS** the request for an incentive award in the amount of $5,000 for Plaintiffs Segarceanu, Galicia and Jimenez.

### b. Mr. Juarez

Class Counsel explains that because Mr. Juarez applied for loans before SoFi created the 877 number, he does not fall within either the California or National class definitions. *See* Dkt. No. 106 at 23–24. However, counsel urges that these class definitions were designed to ensure that potential class members could be identified and notice provided. *See* Dkt. No. 109 at 6–7; *see also* Dkt. No. 99 at ¶¶ 4–6. They therefore request that Mr. Juarez, a non-class member who was actively involved in this litigation, receive $5,540 as an "individual payment." Dkt. No. 106 at 21–25; Dkt. No. 109 at 3, & n.3. According to Class Counsel, this reflects a $5,000 incentive award like the other class representatives, and an additional $540 in recognition that Mr. Juarez will not receive any monetary relief from the Settlement Fund. *Id.*

In its order granting preliminary approval, the Court expressed concern about whether Mr. Juarez is properly entitled to any incentive award since he is not a member of either settling class. The Court stated that it would consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Following the hearing, the Court also gave counsel an opportunity to supplement the record with case law supporting their requested award for Mr. Juarez. *See* Dkt. No. 110. Counsel provided a supplemental brief. *See* Dkt. No. 112.

However, the Court remains concerned that class settlement funds simply should not be used to pay non-class members, even someone like Mr. Juarez who has been actively involved in the case. Counsel acknowledges that Mr. Juarez is not a class member or class representative because of the way they defined the settlement classes. Yet they are still asking that he receive approximately five times more than the average Class Member. *See* Rust Decl. at ¶ 20.

Class Counsel urges that "[u]nder applicable precedent, plaintiffs are not required to be class members or representatives to recover for their individual release of claims or their services to the class as part of a settlement." *See* Dkt. No. 112 at 1. Counsel cites, for example, *Mitzie Perez v. Wells Fargo & Co.*, in which the court approved the award of $17,000 individual payments to non-class member plaintiffs. Case No. 17-cv-00454-MMC (N.D. Cal. Jan. 8, 2021), Dkt. No. 366. Yet as discussed at length during the final fairness hearing, the court in *Mitzie Perez* simply adopted counsel's proposed order. *Id.* Neither the order nor the transcript from the final fairness hearing addresses why it is appropriate to award non-class members money from the settlement fund. It is not even clear from the face of the order that the "individual plaintiffs" are not members of the settlement class. *See id.* at 8 (simply concluding that "individual payments for Plaintiffs Mitzie Perez and Sergio Barajas in the amount of $17,000 each are fair and reasonable"). Many of counsel's other cases lack any explicit analysis of this issue. *See, e.g.*, *Bennett v. SimplexGrinnell LP*, No. 11-CV-01854-JST, 2015 WL 12932332, at *7 (N.D. Cal. Sept. 3, 2015).

The only Ninth Circuit case that counsel cites is *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 670 (9th Cir. 2020), in which the Court concluded that the district court did not abuse its discretion in approving a class action settlement. As relevant to this case, the Court in *Chambers* addressed an objector's challenge to "service payments to several non-class members." *Id.* Specifically, the objector argued that these payments violated the typicality and adequacy requirements of Rule 23(a)(3) and (4). *See id.* The Ninth Circuit rejected this argument, concluding that Rule 23 does not apply to non-class members because they are not class representatives. The Court did not, however, hold that payments to non-class members from a class fund are appropriate. *Chambers* did not involve a common fund at all. And to the extent the Ninth Circuit addressed broader concerns about benefits paid to non-class members, the Court

1    noted that "non-class compensation is independent of the class recovery, and requires non-class
2    members to execute a separate release as consideration." *Id.*  Here, in contrast, Mr. Juarez's non-
3    class recovery would come directly out of the class fund.  *See* SA at § 3.3.4.
4         Moreover, Plaintiffs' own cases suggest that when considering the reasonableness of an
5    incentive payment, the Court should consider the equities as between "named class members" and
6    "unnamed class members."  In *Carlin v. DairyAmerica, Inc.*, for example, the court explained:

> Given that service awards are at the discretion of the district court,
> whatever the method used, the Court must make sure that where there
> is a "very large differential in the amount of damage awards between
> the named and unnamed class members," that differential is justified
> by the record.

380 F. Supp. 3d 998, 1025 (E.D. Cal. 2019) (quoting *Staton v. Boeing Co.*, 327 F.3d at 978).
*Staton v. Boeing*, in turn, suggests that it could be an abuse of discretion to award class funds to
non-class members.  *See* 327 F.3d at 977–78.  In *Staton*, the son of a class representative and a
non-class member received an incentive award under the terms of a consent decree in an
employment discrimination class lawsuit.  *Id.*  The Ninth Circuit recognized that such individuals
could contribute meaningfully to a case, but cautioned that "if those [non-class] individuals
rendered compensable services to the lawyers, then the lawyers should pay for those services from
the amount of the fund properly awarded for costs or fees, as appropriate." *Id.* at 978.  The Court
further indicated that the consent decree "should be approved only if the provision awarding that
person or those persons damages is deleted." *Id.*

In short, the Court finds that Class Counsel has not sufficiently supported its contention
that class funds can be used to pay non-class members.  The Court does not minimize Mr. Juarez's
substantive role in this case.  But because he is not a class member, the Court finds it inappropriate
to award Mr. Juarez any money from the class fund, given the Court's obligation to assess whether
the settlement is fair to the class.  The request for an inventive award for Mr. Juarez is thus
**DENIED**.

//

### III. CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement and **GRANTS IN PART** and **DENIES IN PART** the motion for attorneys' fees and incentive award. The Court awards attorneys' fees and costs in the amount of $300,000; settlement administrator costs in the amount of $25,000; and incentive awards to Plaintiffs Segarceanu, Galicia and Jimenez in the amount of $5,000 each.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are further directed to file a short stipulated final judgment of two pages or less within 21 days from the date of this order. The judgment need not, and should not, repeat the analysis in this order.

**IT IS SO ORDERED.**

Dated: 6/8/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge